UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos D. WALKER, Defendant–
Appellant.

No. 95–3861.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1996.

Decided Aug. 13, 1996.

Michael G. Heavican, Omaha, NE, argued (Thomas J. Monaghan, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and WOLLMAN and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Carlos D. Walker appeals from the final judgment of the district court entered after he pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute in excess of 50 grams of cocaine base. Walker's guilty plea specifically preserved his right to appeal the district court's [1] denial of his motion to dismiss the indictment, in which Walker claimed that the government violated his Sixth Amendment speedy trial rights because of the period of time that elapsed between his indictment and his return to the District of Nebraska to stand trial. After reviewing the record, we affirm.

## I.

On September 6, 1988, Carlos Walker was charged in Nebraska state court with possession with intent to deliver cocaine base. For his permanent address, Walker gave law enforcement officers the Los Angeles, California, address of his parents' residence. After being released on bail, Walker fled the jurisdiction and failed to appear in the Douglas County, Nebraska, district court for any subsequent court appearances on the state charges. On August 22, 1991, Walker was indicted by a federal grand jury in the District of Nebraska on one count of conspiracy to distribute cocaine base. A federal arrest warrant was issued and was returned unexecuted, and the United States District Court was informed that Walker was a fugitive from justice.

In 1991, one of Walker's co-conspirators had contact with Walker in a telephone conversation monitored by the FBI. In that conversation, the co-conspirator informed Walker that law enforcement officers had penetrated the conspiracy. Walker's co-conspirators also provided other information leading law enforcement officers to conclude that Walker was in Los Angeles. FBI agents made efforts to locate Walker in Los Angeles but were unsuccessful. They did not, however, seek Walker at his parents' Los Angeles residence.

Special Agent G. William Nellis of the Omaha, Nebraska, office of the FBI testified at the hearing on Walker's motion to dismiss regarding the particular procedures the FBI uses in locating and identifying individuals accused of crimes, procedures that were employed during the time Walker was a fugitive. Agent Nellis testified that when an indictment is returned and an arrest warrant issued, the defendant's name is entered into the National Crime Information Center (NCIC) computer system within 24 hours. Information entered includes the accused's name, date of birth, tattoos, fingerprints, aliases, sex, and race. The NCIC information is available to all federal and state law enforcement agencies nationwide.[2] If an in-

---

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Kathleen A. Jaudzemis, United States Magistrate Judge for the District of Nebraska.

2. Agent Nellis testified that he was not the individual who entered the information concerning Walker into the NCIC computer system. He assumed that his predecessor in the Omaha FBI office in charge of Walker's case entered the information. That individual would have had the arrest report on Walker's Nebraska state charges to use for information.

dividual whose name is entered into the NCIC database is later arrested and provides correct identification, a match or "hit" will occur when the arresting agency enters his name into the system. The match informs the arresting agency that the individual is wanted on charges elsewhere and who wants him. If the arresting agency believes the individual has provided false information concerning his identity, that agency may send the individual's fingerprints to the FBI's headquarters in Washington, D.C. If the fingerprints match any in the FBI's database, that information will be sent to the agency detaining the individual as well as to the agency seeking the individual.

Agent Nellis testified that the FBI's practice is to check the NCIC records every six months to see whether a wanted individual in the system has been arrested. Agent Nellis stated that the six-month checks were performed with respect to Carlos Walker after his indictment but the checks revealed nothing.

Walker was arrested on unrelated charges in Los Angeles on August 17, 1993. At the time of his arrest, Walker was operating under the alias of "Omar Dotson," and had identification as such. The California authorities provided Walker's fingerprints to the FBI's identification division in Washington, D.C. He was positively identified on September 7, 1993, and Agent Nellis received information on that date concerning Walker's whereabouts. Agent Nellis did not contact the Los Angeles FBI so they could contact Walker, but Agent Nellis did inform the U.S. Attorney's office in Omaha, Nebraska, that Walker had been arrested and was being detained in Los Angeles. Agent Nellis notified officials at the Los Angeles County Jail that Walker was wanted by the FBI in Omaha, Nebraska, and should be detained pending his return to Nebraska.

On October 8, 1993, Walker was sentenced in California state court on "felony evading" charges to two years of imprisonment and was received at Soledad prison on January 21, 1994. Walker subsequently completed a petition for speedy trial on his federal charges on May 10, 1994, and mailed the petition to the U.S. Attorney's office in Omaha, where it was received on May 17, 1994. On May 24, 1994, Agent Nellis placed a formal detainer[3] on Walker. The federal district court in Nebraska subsequently issued a writ of habeas corpus ad prosequendum on June 8, 1994, and Walker was transported from California to Nebraska on July 7, 1994. He entered his initial appearance and was arraigned the following day.

Walker then filed a motion to dismiss the indictment with prejudice on the basis that his Sixth Amendment right to a speedy trial was violated because of the 37–month delay between his indictment and arraignment. After holding an evidentiary hearing and applying the principles set forth in *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the magistrate judge recommended denial of Walker's motion to dismiss. The district court adopted the report and recommendation and denied Walker's motion to dismiss. Walker then entered a conditional plea of guilty under Federal Rule of Criminal Procedure 11(a)(2), preserving his right to challenge the district court's denial of his motion to dismiss.

## II.

Walker contends that the *Doggett* factors, when correctly balanced, require dismissal of the indictment. Specifically, he claims that the 37–month[4] delay was presumptively prejudicial, the government failed to exercise due diligence in locating him, he timely asserted his speedy trial rights, and his defense

---

**3.** A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan,* 507 U.S. 43, 44, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993).

**4.** We are unsure how Walker calculates a 37–month delay. The indictment came down on

August 22, 1991, and Walker was returned to Nebraska to stand trial on federal charges on July 7, 1994. By our calculation, that is approximately 35 months. Walker does not state the points in time he utilizes to measure his 37–month calculation. In any event, we will assume for the purposes of this case that the elapsed time was 37 months.

has been prejudiced due to the passage of time.

The magistrate judge correctly observed that the analysis set forth in *Doggett* governs Walker's Sixth Amendment speedy trial claim. In *Doggett,* the Supreme Court stated that Doggett's constitutional speedy trial claim turned on the four factors it had set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and went on to expand upon and refine the *Barker* factors. Those factors are: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett,* 505 U.S. at 651, 112 S.Ct. at 2690.

■ The first factor, whether the delay was uncommonly long, consists of a dual inquiry. *Id.* "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Id.* at 651–52, 112 S.Ct. at 2690–91 (quoting *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192) (internal citation omitted). The court acknowledged that lower courts had concluded that, depending on the charges, a delay that approaches one year would be "presumptively prejudicial," triggering the speedy trial inquiry and appeared to accept that conclusion. *Id.* at 652 n. 1 and 658, 112 S.Ct. at 2691 n. 1 and 2694. The 37–month delay in this case is thus sufficient to trigger the speedy trial analysis.

If the defendant makes a showing sufficient to trigger the speedy trial inquiry, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652, 112 S.Ct. at 2691. In this vein, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* Accordingly, the 37–month period of time is a factor which weighs in Walker's favor.

■ The second factor involves determining who is responsible for the delay, the defendant or the government. *Id.* at 652, 112 S.Ct. at 2691. The government's intentional delay in locating a defendant will weigh heavily against it. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Negligence, on the other hand, will be weighted less heavily against the government but is still a considerable factor in the weighing process. *Id.;* see also *Doggett,* 505 U.S. at 652–53, 112 S.Ct. at 2690–91.

■ The magistrate judge noted that Walker makes no claim of intentional governmental delay; rather, Walker contends that the government was negligent in failing to locate him. In deciding Walker's claim, the magistrate judge considered the following facts. After Walker was released on bail for his Nebraska state court charges, he fled the jurisdiction. The Nebraska and California FBI offices made efforts to locate Walker based on information obtained from Walker's co-conspirators but were unable to find him. The FBI also entered Walker's personal information in the NCIC computer and checked on that information every six months to see if Walker had been located. When Walker was arrested in California in 1993, he was using an alias and possessed a false identification. Based on these facts, the magistrate judge concluded that the government had exercised reasonable diligence and was not negligent as that term was defined in *Doggett* and *Barker.*

Much of Walker's brief and argument assails the magistrate judge's conclusion that the government was not negligent. Walker points out that in his Nebraska state criminal case, he provided authorities with a permanent address, which was his parents' Los Angeles address, and that the FBI possessed this information at the latest after his federal indictment on August 22, 1991. Further, the Omaha FBI instructed the Los Angeles FBI to begin their search for Walker in Los Angeles at Walker's parents' address. Walker's parents furnished an affidavit stating that no law enforcement officers had come to their residence inquiring about Walker dur-

ing the time in question. Further, Agent Nellis testified that he was unaware what specific steps the Los Angeles FBI took to locate Walker. Walker claims that the FBI knew that he had fled to California because the FBI had taped the conversation between Walker and a co-conspirator. In short, given this evidence, Walker argues that the magistrate judge's conclusion that the government was not negligent in locating him simply cannot be upheld. We disagree.

In *Doggett*, the Supreme Court indicated that appellate courts are to treat with "special deference" a district court's determination concerning whether the government was negligent. *Id.* at 652, 112 S.Ct. at 2690. Thus, in this case, we must view the magistrate judge's conclusion under this very deferential standard of review. Walker fled Nebraska after he was released on bond in his state case and remained a fugitive until the time that he was apprehended by California authorities. While in California, he actively attempted to disguise his identity, using a false name and possessing a false identification presumably for that specific purpose. Although the Los Angeles FBI possessed Walker's parents' address, Agent Nellis testified that many times authorities are reluctant to contact a fugitive's relatives, for fear that the relatives will notify the fugitive that authorities have come looking for him. It is not unreasonable to conclude that a fugitive would probably avoid going to any location in the future if he knew that law enforcement officers had been there searching for him. Thus, even if the Los Angeles FBI did not go to Walker's parents' residence and inquire about his whereabouts, such a failure does not necessarily lead to the conclusion that the government was negligent in its efforts to locate Walker.

■ Additionally, by entering Walker's name in the NCIC's system, the FBI put law enforcement agencies around the country on notice that Walker was wanted by the FBI in Omaha on drug charges. Agent Nellis testified that the government performed an updated NCIC search every six months to see if Walker had been apprehended or located. The Omaha FBI also provided Walker's fingerprints to FBI headquarters in Washing-

ton, D.C. Agent Nellis also testified that his agency did not receive any information that Walker could be found at any specific location in Los Angeles, one of the largest cities in the world, at any given time. In sum, the magistrate judge made no error in concluding that the government exercised reasonable diligence in its pursuit of Walker.

The facts of this case are not even remotely comparable to those present in *Doggett*, where the Supreme Court held that the government had been negligent in locating the defendant. There, the defendant, who had been indicted in the United States on drug charges but had left the country before he could be apprehended, subsequently reentered this country clearing customs under his own name. *Id.* at 649, 112 S.Ct. at 2689. He married, earned a college degree, became employed as a computer operations manager, and lived openly under his own name. *Id.* He was discovered nearly six years after he returned to the United States when the government ran a simple credit check on those individuals who were subject to outstanding warrants; the government knew within minutes after running the credit check where Doggett lived and worked. *Id.* at 650, 112 S.Ct. at 2689. Under those facts, the Supreme Court held that the lower court committed no error in concluding that the government was negligent. *Id.* at 652, 112 S.Ct. at 2690.

Such is not the case here. Unlike Doggett, Walker attempted to conceal his whereabouts while he was a fugitive by using a false name and false identification. Walker points to no evidence that he lived openly under his own name or that by running his name through a credit bureau the government would have discovered his whereabouts. Thus, we find the facts of *Doggett* readily distinguishable from the case at bar.

■ The third factor in the speedy trial calculus, whether in due course the defendant asserted his right to a speedy trial, also runs against Walker. The *Doggett* Court held that where a defendant knows of the potential charges against him a lengthy time before he is apprehended, this factor will "be weighed heavily against him." *Id.* at 653, 112 S.Ct. at 2691. In *Doggett*, there was no

record evidence that Doggett knew of the charges against him, and thus his failure to assert his speedy trial rights earlier could not be weighted against him. *Id.* Here, by contrast, the record reveals that Walker was in contact with his co-conspirators as early as 1991, and was informed that the drug conspiracy had been infiltrated. Although the record is not entirely clear, an inference can be drawn that Walker acquired knowledge of the federal charges while confined in the Los Angeles County Jail after his jailers were informed of Walker's federal charges by Agent Nellis in September 1993. Further, after Walker asserted his right to a speedy trial in his written request sent to the U.S. Attorney's office in Nebraska, he was immediately returned to that jurisdiction. Thus, this factor weighs in favor of the government.

■ The fourth factor articulated in *Doggett*, whether the defendant suffered prejudice as a result of the delay must be decided against Walker. *Doggett* notes that prejudice may take on several forms, including " 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Id.* at 654, 112 S.Ct. at 2692 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Id.* (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193).

Walker claims that he suffered prejudice because he sat in a California prison eleven months after his arrest and identification were available to federal law enforcement officers. However, the time Walker spent in the California prison was the result of his California charges; it was not pretrial detention in the instant federal case. With respect to prejudice in the form of anxiety and concern, Walker simply makes the unsupported assertion that he was anxious about the charges against him. However, Walker knew as early as 1991 that drug charges may be filed against him and took no action to bring those charges to closure; rather, he continued to conceal his identity to prevent the instant charges against him from being resolved.

■ Thus, we come to the final element of the prejudice factor: the potential impairment of Walker's defense caused by faded memories and loss of exculpatory evidence. The length of the delay in bringing the accused to trial is a factor in this equation, "and its importance increases with the length of the delay." *Id.* at 656, 112 S.Ct. at 2693. However, "if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense." *Id.*

We have concluded above that the government pursued Walker with reasonable diligence. That conclusion requires us to reject Walker's speedy trial claim, unless Walker offers proof of specific prejudice. *See id.; United States v. Aguirre*, 994 F.2d 1454, 1457 (9th Cir.), *cert. denied,* 510 U.S. 1029, 114 S.Ct. 645, 126 L.Ed.2d 603 (1993). Walker points to no specific prejudice to his defense by the passage of time; instead he merely states a conclusion that his ability to prepare his defense was impaired. Such a showing will not suffice to show specific prejudice.

Thus, when the factors articulated by the *Doggett* Court are weighed, the scale tips decidedly in favor of the government. The only factor weighing in favor of Walker is the length of the delay and, considering all of the facts about it, we conclude that it alone cannot tip the scale in favor of Walker. Accordingly, we hold that the district court correctly rejected Walker's speedy trial claim by denying his motion to dismiss the indictment.

### III.

For the reasons enumerated above, we affirm the judgment of the district court.