# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1826

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Keith Anton Sprouts, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2001

Filed: March 14, 2002

_____

Before HANSEN,[1] Chief Judge, McMILLIAN, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant Keith Anton Sprouts was convicted of escape from the custody of a federal institution in violation of 18 U.S.C. § 751(a). He appeals the district court's[2] denial of his motions for dismissal for excessive pre-indictment delay and for

_____

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

[2]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

statutory and constitutional speedy trial violations. He also appeals an evidentiary ruling, contending that his Sixth Amendment right to confrontation was violated by the admission of certain hearsay evidence. Because we find his claims to be without merit, we affirm.

## I.    BACKGROUND

Sprouts was incarcerated at the Federal Prison Camp in Yankton, South Dakota, from December 29, 1992, through October 15, 1999, when he was transferred to another facility. In November of 1999, a security officer with the prison camp "shook down" the personal belongings of inmate Leroy Scott. In this search, the officer found a cellular phone, which Scott was not authorized to possess under prison rules. In relocating Scott to another facility, his personal property was inventoried. The officer who received the property found photographs of Scott, Sprouts, and a woman in what appeared to be a hotel room.

Discovery of the photographs culminated in the prosecution of Sprouts and Scott for escape. Although Sprouts has indicated he was aware he would be charged with escape in November of 1999, he was not indicted until August 16, 2000. Trial commenced on December 19, 2000.

At trial, it was established that neither Sprouts nor Scott had ever been reported absent from the prison camp by prison officials. However, witness Leslie Flategraff testified that in August of 1999, she and the woman in the photograph visited Scott and Sprouts at the prison camp. Early the next morning after that visit, Sprouts and Scott showed up at the hotel room she had rented in Yankton. She further testified that she took the photograph of Sprouts, Scott, and her friend at that time.

Neither the officer who prepared the incident report regarding discovery of the cellular phone or the officer who inventoried Scott's property were called to testify

at trial. However, a special investigative supervisor, who was not assigned to that facility at the time of the escape, shake-down, or inventory, testified as to the contents of those reports. Both Sprouts and Scott were found guilty by a jury.

## II.     DISCUSSION

### A.     Protections Against Delay Under the Fifth Amendment, Speedy Trial Act, and Sixth Amendment

The Fifth Amendment's due process clause prohibits unreasonable pre-indictment delay. United States v. Sturdy, 207 F.3d 448, 451-52 (8th Cir. 2000). To establish unreasonable pre-indictment delay, a defendant must show that the delay resulted in actual and substantial prejudice to his defense, and that the government intentionally delayed the indictment to gain a tactical advantage or to harass him. Id. at 452. To prove actual prejudice, the defendant must identify witnesses or documents lost during the period of delay, and not merely make speculative or conclusory claims of possible prejudice caused by the passage of time. Id. The defendant also has the burden of showing that the lost testimony or information was not available through other means. Id. If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay. Id.

Here, Sprouts has failed to establish actual prejudice caused by the government's delay in charging him. In his brief, he highlights his "allegations that due to the delay, an identified witness[ ] and a witness known only to [him] by a prison moniker had been subsequently released, and [he] had no ability to locate these exculpatory witnesses." He contends that "the witnesses would have testified that incriminating photographs were taken of [him] . . . prior to incarceration and that [he] never left the prison camp."

However, Sprouts' lack of specificity and his own admissions render his claims merely speculative and conclusory. For instance, Sprouts indicates in his pro se motion to dismiss the indictment that he knew as early as November 20, 1999, that he was going to be charged, yet contends he was prejudiced because one of his witnesses was released from prison in February of 2000. He also indicates that he lost contact with the other witness in April of 2000. We fail to see what he would have done differently to secure his witnesses' appearances for trial had he been charged as of February or April, given the fact that he anticipated the charge and had three to five months to interact with them. Even if he had been charged when he still had contact with his witnesses, according to his allegations, he would not necessarily have had contact at the time of trial–even if the trial would have been held much earlier than it actually was.

Perhaps more importantly, Sprouts fails to explain why the prisoners' names and last known whereabouts were not available to his counsel through prison records, what efforts were made to retrieve such information, or how the purported delay might have impeded such endeavors. Given his assertions, we cannot determine whether any prejudice that might have been caused was due to a delay in indicting him or to his own lack of diligence. Sprouts has not demonstrated actual and substantial prejudice to his defense and his Fifth Amendment pre-indictment delay claim fails.

A defendant also has a Sixth Amendment right to speedy trial, as well as statutory protection provided by the Speedy Trial Act, 18 U.S.C. § 3161. United States v. Thirion, 813 F.2d 146, 154 (8th Cir. 1987). Sixth Amendment and Speedy Trial Act challenges for delay are reviewed independently of one another. Id.

Under the Speedy Trial Act, subject to various exceptions not applicable here, the defendant's trial must commence seventy days from the date he is formally charged, or the date he makes an initial appearance before a judge on the charge,

whichever comes later. 18 U.S.C. § 3161(c)(1). Here, although the indictment against Sprouts was filed on August 16, 2000, his right to a speedy trial did not accrue until his initial appearance on October 11, 2000, that being the latter of the two events. Sprouts' trial commenced on December 19, 2000, thereby fogging the glass of the Act's seventy-day deadline but not breaking it.[3]

In contrast to the prescribed limits under the Speedy Trial Act and the Fifth Amendment's protection against pre-indictment delay, the Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences. United States v. Gonzalez, 671 F.2d 441, 444 (11th Cir. 1982); cf. United States v. MacDonald, 456 U.S. 1, 7 (1982) ("Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending." (citations omitted)); United States v. Marion, 404 U.S. 307, 321 (1971) (finding that to invoke the Sixth Amendment speedy trial provision, the defendant need not necessarily have been formally charged, but he at least must have been arrested). It is unusual to find a Sixth Amendment violation when the Speedy Trial Act's time strictures have been satisfied. Thirion, 813 F.2d at 154; United States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982) ("The Speedy Trial Act was enacted in part out of dissatisfaction with sixth amendment speedy trial jurisprudence, and to put more life into defendants' speedy trial rights.").

Assessment of whether a defendant's Sixth Amendment right to a speedy trial has been violated includes consideration of the length of the delay, the reason for the

---

[3]We, therefore, need not consider whether time taken for defendant's motion in limine delayed the trial and should thereby be excluded in calculating the seventy days.

delay, the defendant's assertion of his right, and prejudice to the defendant. Thirion, 813 F.2d at 154. However,

> to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. . . . [T]he presumption that pretrial delay has prejudiced the accused intensifies over time.

Doggett v. United States, 505 U.S. 647, 651-52 (1992). The length of delay that requires us to assess the other factors is "dependent upon the peculiar circumstances of the case." Barker v. Wingo, 407 U.S. 514, 530-31 (1972).

Here, Sprouts was not arrested for the escape because he was already incarcerated on another charge. Therefore, he did not become accused for purposes of the Sixth Amendment speedy trial provision until he was indicted on August 16, 2000. See United States v. Walker, 92 F.3d 714, 719 (8th Cir. 1996) (finding that time spent in prison on state charges did not amount to prejudice for purposes of Sixth Amendment claim regarding federal charges); Gonzalez, 671 F.2d at 444 (indicating that Sixth Amendment speedy trial right attaches at earlier of arrest or indictment). Just over four months, or 125 days, elapsed between that date and December 19, 2000, the date his trial commenced. We cannot say that such period between indictment and trial on an escape charge is extraordinary or presumptively prejudicial. Cf. United States v. Patterson, 140 F. 3d 767, 772 (8th Cir. 1998) (approximately five-month period between detention and trial on drug charges "was not sufficiently long to be presumptively prejudicial"); United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) (lapse of "a little over seven months" between

-6-

indictment and trial was "too brief a delay to trigger review of . . . Sixth Amendment speedy trial claim"); Nance, 666 F. 2d at 360 (period of less than five months between indictment and trial on charge of theft from interstate shipments was not presumptively prejudicial). But cf. Doggett, 505 U.S. at 652 n.1 (indicating that lower courts have generally found delay approaching one year to be presumptively prejudicial); Barker, 407 U.S. at 530, 533 (delay of well over five years was presumptively prejudicial); Walker, 92 F.3d at 717 (delay of thirty-seven months was "sufficient to trigger the speedy trial analysis"). Therefore, we need not balance or examine the other three factors–that is, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Nance, 666 F.2d at 360-61

Nevertheless, even if we were to indulge Sprouts with the assumption that the delay was unnecessarily lengthy, other countervailing factors would outweigh that deficiency. Cf. Barker, 407 U.S. at 534. In particular, the reason for delay was merely court scheduling, which is not attributable to the government for Sixth Amendment speedy trial analysis. Nance, 666 F.2d at 361. The government filed no continuances nor engaged in dilatory tactics of any kind. Furthermore, we find no prejudice to Sprouts.

In the sphere of Sixth Amendment analysis, we assess prejudice in light of defendants' interests that the constitutional speedy trial right was designed to protect. Barker, 407 U.S. at 532. Those interests are: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired–with the last being the most serious. Id. Sprouts would have been serving a sentence on another charge even had he not been indicted for escape and, therefore, was not oppressively incarcerated while awaiting trial for the latter. Nor, given the time-frame, could his anxiety and concern have been exacerbated much beyond awaiting trial on the matter generally. Finally, the possibility of impairing Sprouts' defense is lacking. We have no indication of when he would have preferred the trial been held in order to have his would-be exculpatory

witnesses present. As we discussed in our assessment of Sprouts' Fifth Amendment claim, even had his trial been held thirty days from the date of indictment, cf. 18 U.S.C. § 3161(c)(2) (indicating that, a trial shall not commence less than thirty days from the date a defendant first appears through counsel, unless he consents otherwise in writing), based on the allegations of his pro se motion to dismiss the indictment, one witness would have been released already and he would have lost contact with the other. Perhaps a better solution to Sprouts' problem would have been to seek a continuance to allow more time to find his witnesses or obtain information about their identities and last known whereabouts from prison records.

Sprouts' claims of excessive delay in violation of the Sixth Amendment and Speedy Trial Act, as well as his claim of pre-indictment delay under the Fifth Amendment, fail.

## B. Hearsay

Sprouts also argues that the trial court improperly admitted the testimony of Lieutenant Wayne Morris, a special investigative supervisor at the Federal Prison Camp. Morris was not assigned to work at the Camp until after the escape and subsequent investigation. However, he testified–as the custodian of investigative reports–about the incident report regarding the shake-down of Scott's belongings, Sprouts' co-defendant, and about the resulting inventory of those belongings that yielded the photograph of Sprouts together with his co-defendant and a woman in a local hotel. Those reports had been prepared by other officers in carrying out their administrative duties at the prison but who did not testify.

Sprouts contends that admission of the hearsay statements regarding the absent officers' reports implicates protections of the confrontation clause found within the Sixth Amendment. However, the trial court determined that events leading to discovery of the photographs–the shake-down and inventory–were done pursuant to

the normal course of administrative activities in a prison and, therefore, Morris' testimony was admissible as either a business record under Federal Rule of Evidence 803(6), or as a public record not subject to the criminal investigation negative exception under 803(8).

We need not reach the propriety of allowing Morris' testimony. When Morris testified about the incident and inventory reports, the photograph[4] of Sprouts, Scott, and the woman had already been admitted into evidence during Leslie Flategraff's testimony. She testified about when it was taken, who took it, and other such circumstances giving it context. Morris' testimony regarding the discovery of photographs added nothing to the prosecution's case in that the photograph of the three had already been properly admitted. Having carefully reviewed the record before us, we find any error that may have occurred to be harmless beyond a reasonable doubt. See United States v. Benson, 961 F.2d 707, 709 (8th Cir. 1992); United States v. Sallins, 993 F.2d 344, 348 (3d Cir. 1993) ("An evidentiary error is harmless only if it is highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction.").

## III.   CONCLUSION

For the reasons we have discussed, we affirm.

---

[4]The numbering of Exhibits 7 and 12, and the parties' references to "Exhibit 12" present some confusion. However, introduction of either exhibit during Morris' testimony was harmless. The photograph of Sprouts, Scott, and the woman (Exhibit 7) had already been introduced during Flategraff's testimony, and the other photograph (Exhibit 12) was of Scott and the woman, not Sprouts, and therefore did not harm Sprouts.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.