# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1855

_____

United States of America,     *
                            *

           Appellee,         *

                            *    Appeal from the United States

      v.                     *    District Court for the

                            *    District of Nebraska.

Luis Alberto Erenas-Luna, also known   *
as Miguel Ontiveros-Murrillo,      *

                            *

           Appellant.        *

_____

Submitted: September 25, 2008
Filed: March 23, 2009

_____

Before RILEY, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Miguel Ontiveros,[1] a.k.a. Luis Alberto Erenas-Luna, a.k.a. Miguel Ontiveros-Murrillo, appeals his conviction for conspiring to distribute methamphetamine. The sole issue is whether the district court erred by denying Ontiveros's motion to dismiss for unconstitutional post-indictment delay. We vacate the district court's order denying Ontiveros's motion to dismiss and remand for further proceedings consistent with this opinion.

_____

      [1] The appellant refers to himself as Miguel Ontiveros. We respect appellant's preference and refer to him as Ontiveros throughout this opinion.

I.

In April 2003, police in Grand Island, Nebraska, arrested Ontiveros on an outstanding warrant. Police searched Ontiveros's home and found evidence related to a drug conspiracy. Because Ontiveros, a Mexican citizen, was an undocumented alien, police contacted federal immigration authorities. Immigration authorities took custody of Ontiveros and, on April 21, 2003, had him deported. In early June 2003, a confidential informant notified a Grand Island police officer that Ontiveros had returned to the United States and was in Lincoln, Nebraska. The officer contacted authorities in Lincoln who verified seeing someone matching Ontiveros's description at the home where the informant reported that Ontiveros was staying.

On July 24, 2003, approximately three months after his arrest and deportation, a federal grand jury indicted Ontiveros for conspiring to distribute methamphetamine. For wider-investigation purposes, the government sealed the indictment. U.S. Marshals sent a copy of Ontiveros's federal arrest warrant to the Grand Island Police Department. They also informed FBI agents in the Grand Island area that a warrant had been issued for Ontiveros's arrest.

Pursuant to a thirty-day waiting policy, the Grand Island police did not immediately forward Ontiveros's arrest-warrant information to the FBI to enter into the National Crime Information Center ("NCIC") database.[2] According to the evidence, FBI agents and U.S. Marshals aware of the warrant also made no effort to enter the data. Moreover, despite the arrest warrant, knowledge of Ontiveros's contacts in Nebraska, Arizona, and Mexico, and a late-September 2003 tip from an informant stating that Ontiveros had been in Grand Island within the previous month,

_____

[2] The NCIC database is an FBI-controlled national database that contains information for recent and outstanding arrest warrants. Both federal and state law-enforcement officers, including immigration authorities, can access the system to determine whether a person has outstanding arrest warrants.

it appears no federal or state authorities made any attempt to locate and arrest Ontiveros.

According to police testimony, by the end of 2003, Ontiveros's case had inexplicably "slipped through the cracks" such that no one actively searched for Ontiveros or realized his information was not in the NCIC database. As a result, when immigration and border-control officials apprehended Ontiveros on multiple occasions in 2004, they remained unaware of Ontiveros's arrest warrant and did not take him into custody.

In February 2006, an FBI agent reviewing fugitive listings in Grand Island discovered Ontiveros's omission from the NCIC database and entered Ontiveros's arrest-warrant information. Approximately four months later, in June 2006, Arizona police arrested Ontiveros on separate drug charges and discovered Ontiveros's outstanding arrest warrant on the NCIC. The Arizona police then notified Nebraska officials of Ontiveros's whereabouts. Nebraska FBI agents arranged for Arizona FBI agents to detain Ontiveros at a court appearance and, in July 2006, pursuant to a court order, had him transported to Nebraska. According to the district court's findings, Ontiveros first learned of the pending Nebraska drug charge when the Arizona FBI detained him.

After Ontiveros returned to Nebraska, the district court arraigned Ontiveros and unsealed the July 2003 indictment. Ontiveros moved to dismiss the charge for unconstitutional post-indictment delay. A magistrate judge held a hearing on the matter and filed a report and recommendation that the district court deny the motion. Over Ontiveros's objections to the report and recommendation, the district court adopted the magistrate judge's findings and denied Ontiveros's motion.

In August 2007, Ontiveros proceeded to trial. A jury found Ontiveros guilty. Following his sentencing, Ontiveros filed a timely notice of appeal.

-3-

II.

Ontiveros argues that the district court erred in rejecting his claim that the government violated his Sixth Amendment right to a speedy trial. U.S. Const. amend. VI. "We review the district court's findings of fact on whether a defendant's right to a speedy trial was violated for clear error but review its legal conclusions de novo." United States v. Aldaco, 477 F.3d 1008, 1016 (8th Cir. 2007).

The government concedes that the delay in this case was presumptively prejudicial such that we must apply the four-factor-balancing test set forth in Barker v. Wingo to evaluate Ontiveros's claim. Barker v. Wingo, 407 U.S. 514, 530 (1972); see United States v. Jeanetta, 533 F.3d 651, 656 (8th Cir.), cert. denied, 129 S. Ct. 747 (2008) ("A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring application of the Barker factors."). Accordingly, in analyzing Ontiveros's claim, we consider: "1) the length of delay; 2) the reason for delay; 3) whether the defendant asserted the right to a speedy trial; and 4) whether the defendant suffered any prejudice." Jeanetta, 533 F.3d at 656 (citing Barker, 407 U.S. at 530).

A.

Under the first Barker factor, we consider the length of delay. This factor requires a "double inquiry": (1) whether the length of delay was presumptively prejudicial such that it triggers the Barker analysis, and, if triggered, (2) "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." United States v. McGhee, 532 F.3d 733, 739 (8th Cir. 2008) (quotation omitted). As to the latter inquiry, "the presumption that pretrial delay has prejudiced the accused intensifies over time." United States v. Walker, 92 F.3d 714, 717 (8th Cir. 1996) (quotation omitted). Because the government concedes the first inquiry, we proceed to the second.

The Sixth Amendment right to a speedy trial "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." McGhee, 532 F.3d at 739 (quotation omitted). Relying on our decision in Walker, the district court found that "[t]he three-year time period between indictment and arrest weigh[ed] in favor of [Ontiveros]." We agree.

In Walker, a drug-conspiracy case, we applied Barker and held under the first factor that a 37-month post-indictment delay between indictment and arraignment weighed in the defendant's favor. *Walker*, 92 F.3d at 717; see also Aldaco, 477 F.3d at 1019 (holding that a three-and-a-half-year delay between arrest and trial was "uncommonly long"). Here, the delay between Ontiveros's indictment and arraignment was approximately three years and the delay between his indictment and trial was approximately four years. We therefore see no reason to reach a different conclusion than the district court regarding the weight of this factor.

In attempt to distinguish Walker, however, the government notes that the district court suggested that the delay in this case might be calculated more accurately as only 17 to 28 months, measuring from the times when immigration officials had Ontiveros in custody in March 2004 and December 2004[3] to the time when Ontiveros was arraigned in July 2006. According to the court, those measurements may have been more accurate because authorities likely would not have been successful in locating Ontiveros prior to that time, even if they had tried. We reject that conclusion because it is speculative at best. It also considers responsibility for the delay, which is a matter we consider in the second Barker factor. For these reasons, we agree with the district court that the first Barker factor weighs in Ontiveros's favor.

---

[3] We note that the correct measurement from December 2004 to July 2006 would be 19 months, not 17.

B.

Under the second Barker factor, we consider the reasons for the delay and evaluate "whether the government or the criminal defendant is more to blame." Doggett v. United States, 505 U.S. 647, 651 (1992). We accord "'different weights . . . to different reasons.'" Vermont v. Brillon, No. 08–88, slip op. 1, 7 (U.S. 2009). We weigh an intentional delay by the government "heavily against it." Walker, 92 F.3d at 717 (citing Barker, 407 U.S. at 531). We weigh negligence by the government "less heavily" but still regard such negligence as "a considerable factor in the weighing process." Id. (citing Barker, 407 U.S. at 531, and Doggett, 507 U.S. at 652–53). We weigh "delay caused by the defense . . . against the defendant." Brillon, No. 08–88, slip op. at 7. The Supreme Court has called this Barker factor "[t]he flag all litigants seek to capture." United States v. Loud Hawk, 474 U.S. 302, 315 (1986).

Here, the district court found no evidence that the government intentionally delayed Ontiveros's trial. It concluded, however, that the government was "clearly seriously negligent" for failing to take appropriate actions to attempt to apprehend Ontiveros in a timely manner. Conversely, the district court found no evidence that Ontiveros knew of the indictment prior to July 2006 and, accordingly, that Ontiveros was not responsible for the delay in his arrest. The district court ultimately found that this Barker factor "weigh[ed] decidedly against the government."

In Doggett, the Supreme Court instructed us to accord "'special deference' [to a] district court's determination concerning whether the government was negligent." Walker, 92 F.3d at 718 (quoting Doggett, 505 U.S. at 652). "[U]nder this very deferential standard of review," id., we therefore see no reason to disagree with the district court where the government readily admits that it "dropped the ball," let Ontiveros's case "slip through the cracks," made no efforts to locate and arrest Ontiveros over a three-year period, and missed multiple opportunities to apprehend Ontiveros in a timely manner. See Doggett, 505 U.S. at 652–53 (upholding a district

-6-

court's finding of government negligence when the government's investigators "made no serious effort" to locate a defendant who it assumed was abroad and stating that the government's "lethargy" was "findable negligence").

We also find no reason to disagree with the district court's conclusion that Ontiveros was unaware of the indictment prior to July 2006 and, thus, deserved no blame for the delay before that point. It is undisputed that the indictment in question was sealed until July 2006. Moreover, as the government notes, Ontiveros told Arizona FBI agents when he was arrested that he would not have appeared in Arizona court had he known of the Nebraska indictment. Ontiveros did, however, appear in Arizona court and, over the three-year delay, placed himself in multiple situations that could have led to his arrest on the Nebraska drug charge. Under a clear-error standard, this lends sufficient support to the district court's factual conclusion that Ontiveros was unaware of the pending indictment and had no responsibility for the three-year delay between his indictment and arrest.

Finally, as to the time between Ontiveros's arrest and trial, that delay was largely due to Ontiveros's own motions. Thus, we cannot attribute this delay to government negligence. See McGhee, 532 F.3d at 739. Nevertheless, because government negligence resulted in the three-year delay between Ontiveros's indictment and arraignment, we agree with the district court that the second Barker factor weighs decidedly in Ontiveros's favor.

C.

The third Barker factor considers "whether in due course the defendant asserted his right to a speedy trial." Walker, 92 F.3d at 718; see Barker, 407 U.S. at 531–32 (explaining that the defendant's assertion of his constitutional speedy-trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of [the right]").

Focusing its analysis on the three-year delay between Ontiveros's indictment and arraignment, the district court found this factor to be neutral because "[t]here [was] no evidence [Ontiveros] knew, should have known, or could have known of the indictment filed against him on July 24, 2003." While the government agrees with this finding, Ontiveros argues that this factor should weigh in his favor because he raised his claim after his arrest. We disagree with Ontiveros's position.

Because the delay in this case for which the government was responsible predated Ontiveros's arrest, Ontiveros's post-arrest assertion of his speedy-trial right has little bearing on his claim. Under similar circumstances in <u>Doggett</u>, the Supreme Court did not weigh a defendant's post-arrest assertion of his speedy-trial rights in the defendant's favor. Instead, the Court stated only that the defendant "[was] not to be taxed for invoking his speedy trial right only after his arrest." <u>Doggett</u>, 505 U.S. at 654. In <u>United States v. Richards</u>, where the defendant was unaware of his indictment until his arrest but later raised a speedy-trial claim, we similarly held that the third <u>Barker</u> factor had no application and merely "[could] not be weighed against [the defendant]." <u>United States v. Richards</u>, 707 F.2d 995, 997 (8th Cir. 1983). Applying this precedent, we agree with the district court that the third <u>Barker</u> weighs in neither party's favor.

D.

The final <u>Barker</u> factor considers "whether the defendant suffered prejudice as a result of the delay." <u>Walker</u>, 92 F.3d at 719. We assess this prejudice "'in the light of the interests of defendants which the speedy trial right was designed to protect. . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" <u>Aldaco</u>, 477 F.3d at 1019 (quoting <u>Barker</u>, 407 U.S. at 532). Of these interests, prejudice to the last "'is the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"

Walker, 92 F.3d at 719 (quoting Barker, 407 U.S. at 532). Because Ontiveros was not incarcerated or aware of his indictment prior to his arrest, he claims only that the delay at issue prejudiced his defense.

The extent to which a defendant must demonstrate prejudice under this factor depends on the particular circumstances. A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant. Doggett, 505 U.S. at 656; United States v. Brown, 325 F.3d 1032, 1035 (8th Cir. 2003). Where the government has been negligent, however, prejudice can be presumed if there has been an excessive delay. Doggett, 505 U.S. at 656–58. Ontiveros claims his defense suffered both actual and presumed prejudice.

As to actual prejudice, we agree with the district court that Ontiveros's vague claims regarding witness memory loss and lost opportunities to cooperate with the government are insufficient, without more, to satisfy his burden. See Doggett, 505 U.S. at 655 (agreeing with the government that actual prejudice would not be present where the defendant "failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence"); cf. United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir. 2002) (stating, in the Fifth Amendment context, that "[t]o prove actual prejudice [from pre-indictment delay], the defendant must identify witnesses or documents lost during the period of delay, and not merely make speculative or conclusory claims of possible prejudice caused by the passage of time").

We disagree, however, with the district court's finding that it could not presume prejudice. In Doggett, the Supreme Court held that, under the Sixth Amendment, "prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." Doggett, 505 U.S. at 655 (citations omitted). "Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party

can prove or, for that matter, identify" and that negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how [the delay] has prejudiced him." Id. at 655, 657. Accordingly, under the fourth Barker factor, when the delay is excessive, "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows," and our "toleration of . . . negligence varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial." Id. at 657 (internal citation omitted).

Citing a Fifth Circuit case, the district court refused to presume prejudice because it found "courts have generally found presumed prejudice . . . only in cases in which the post-indictment delay lasted at least five years." See United States v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir. 2003) (collecting cases). As a result, the district court concluded that the three-year delay in this case was "insufficient to justify a presumption that the defendant's right to a fair trial has been jeopardized." With respect to the Fifth Circuit's conclusion, we have not held that a bright line exists for presuming prejudice for speedy-trial claims, and we refuse to do so here. As Barker states, "the right to speedy trial is a more vague concept than other procedural rights." Barker, 407 U.S. at 521; see also Brillon, No. 08–88, slip op. at 6 ("The speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.'" (quoting Barker, 407 U.S. at 522)). "We cannot definitely say how long is too long," and there is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." Barker, 407 U.S. at 521, 523. As a result, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." Id. at 522; see also Brillon, No. 08–88, slip op. at 6–7 ("[The speedy-trial right] is 'consistent with delays and depend[ent] upon circumstances'" (quoting Barker, 407 U.S. at 522)).

Here, due to the serious negligence of the government, there was a three-year delay between Ontiveros's indictment and arraignment. Three years is a time well in excess of that required to trigger a Barker review. See Doggett, 505 U.S. at 657–58

-10-

(presuming prejudice where "the delay attributable to the Government's negligence far exceed[ed] the threshold needed to state a speedy trial claim" and noting it had "called shorter delays 'extraordinary'" (quoting Barker, 407 U.S. at 533)); United States v. Ingram, 446 F.3d 1332, 1339 (11th Cir. 2006) (finding a "two-year post-indictment delay intolerable" and presuming prejudice where the first three Barker factors weighed in the defendant's favor); see also Aldaco, 477 F.3d at 1019 (holding that a three-and-a-half year delay between arrest and trial was "uncommonly long").

Although the delay in this case is shorter than the delay at issue in Doggett, we believe Doggett's instruction to vary the weight assigned to the presumption according to the government's negligence and the length of delay sufficiently contemplates this difference. See United States v. Smith, 94 F.3d 204, 212 (6th Cir. 1996) ("[A]ny delay triggering the Barker analysis . . . will generally give rise to a presumption of prejudice, and the only question is how much 'importance' to assign to that prejudice"). We hold, then, that the district court erred in its application of the fourth Barker factor because it applied no presumption in Ontiveros's favor.

## III.

Because the district court failed to apply any presumption of prejudice under the fourth Barker factor, we remand the case for further proceedings with orders to apply an appropriate presumption in Ontiveros's favor. The district court should then allow the government an opportunity to rebut the presumption. See Doggett, 505 U.S. at 658; United States v. Reynolds, 231 F. App'x 629, 631–32 (9th Cir. 2007) (unpublished). If the government is able to do so, the district court should balance the Barker factors appropriately "with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." Barker, 407 U.S. at 533. If, however, the government is unable to rebut the presumption, the Barker factors will weigh in Ontiveros's favor, necessitating the "severe remedy of dismissal," which is

"the only possible remedy" when a defendant's speedy-trial right has been denied. <u>Id.</u> at 522.

      For the foregoing reasons, we vacate the district court's order denying Ontiveros's motion to dismiss and remand for further proceedings consistent with this opinion.

_____