# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3247

_____

United States of America

*Plaintiff - Appellee*

v.

Agustin Rodriguez-Valencia

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: April 18, 2014
Filed: June 2, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Agustin Rodriguez-Valencia pled guilty to conspiracy to distribute methamphetamine. The district court[1] sentenced him to 70 months' imprisonment.

_____

[1]The Honorable Richard E. Dorr, late a United States District Judge for the Western District of Missouri, presided over the motion to dismiss, and the guilty-plea hearing. The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri, presided over the sentencing hearing.

He appeals, arguing that the six-and-a-half-year delay between indictment and arrest violates the Sixth Amendment right to a speedy trial. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In August 2003, DEA agents interviewed Rodriguez-Valencia at his home in Springfield, Missouri. He admitted receiving a pound of meth, selling it to undercover officers, and distributing the rest to a co-conspirator. After the interview, he disappeared.

In November 2005, the government indicted Rodriguez-Valencia and four co-defendants for conspiracy to distribute meth and other drug offenses. The DEA turned over apprehension responsibility to the United States Marshals Service (USMS). Deputy Lonnie Nance took the lead in finding Rodriguez-Valencia. The four co-defendants were arrested within six months. They pled guilty.

For the next six years, Deputy Nance tried to locate Rodriguez-Valencia.

In January 2006, Deputy Nance located Rodriguez-Valencia's mother and sister in Springfield. They said he was in California or Mexico. Deputy Nance obtained court orders for their phone records. He asked a USMS officer in Mexico to find the address associated with their phone calls to Mexico.

In November 2006, Deputy Nance searched computer databases to locate Rodriguez-Valencia. He also ran a nationwide driver's license check.

In February 2007, Deputy Nance checked for public utility records in Rodriguez-Valencia's name. He also visited three prior addresses in Springfield, interviewing Rodriguez-Valencia's former neighbors. They informed him that a woman "Fabiola," a male relative "Jorge," and two or three children had lived with

Rodriguez-Valencia. Deputy Nance found information about Fabiola (later identified as Fabiola Cuevas, Rodriguez-Valencia's wife) and Jorge (later identified as Jorge Rodriguez). He found other addresses where Cuevas and Jorge Rodriguez had lived together. He gave information about them to United States Immigration and Customs Enforcement. He searched for welfare benefits in Cuevas's or Jorge Rodriguez's name. Running a nationwide driver's license check, he found a California license with Cuevas's name and birth date, surrendered to Missouri in 2003. He requested a phone trap-and-trace order.

In January 2008, Deputy Nance investigated addresses previously occupied by Cuevas in Whittier, California.

In December 2008, Deputy Nance found a vehicle that had belonged to Rodriguez-Valencia in Whittier. He found a California license with Jorge Rodriguez's name and birth date, surrendered to Missouri. He checked for California state benefits received by Cuevas, Rodriguez, or Rodriguez-Valencia.

In February 2009, Deputy Nance conducted a nationwide identification-card and driver's license check for Cuevas, Rodriguez, and Rodrigeuz-Valencia. He discovered that a vehicle previously registered to Rodriguez-Valencia in Missouri was registered to someone at the same Whittier address used by Rodriguez-Valencia to register another vehicle in 2002. Deputy Nance gave all known addresses used by Cuevas, Rodriguez, and Rodriguez-Valencia to the Pacific Southwest Regional Fugitive Task Force. He asked them to arrest Rodriguez-Valencia. By May 2009, the Task Force concluded that Rodriguez-Valencia did not live at any address provided. The current occupants had no information about his location.

In July 2010, Deputy Nance searched insurance claim records for Rodriguez-Valencia.

On December 28, 2010, Deputy Randal Aug learned that Rodriguez-Valencia had been stopped by Customs officials in Managua, Nicaragua. Deputy Aug and the Springfield United States Attorney's Office began extradition paperwork. On December 29, they learned that Nicaragua had released Rodriguez-Valencia.

In April 2011, Deputy Jessica Schiwitz requested Rodriguez-Valencia's fingerprints from the FBI. She received them a month later.

In December 2011, Deputy Nance and the United States Attorney's Office submitted an INTERPOL Red Notice application to the USMS International Fugitive Investigative Branch.

In January 2012, Deputy Nance searched the internet for information about Cuevas and Rodriguez-Valencia. He forwarded his findings to USMS personnel in Mexico City.

In February 2012, at the request of the United States Attorney's Office, the district court unsealed Rodriquez-Valencia's indictment for posting with INTERPOL.

In March 2012, Deputy Nance learned that Rodriguez-Valencia had been arrested at the Nicaragua-Costa Rica border.

In April 2012, Rodriguez-Valencia was deported and arrested on arrival in Houston. He made his initial appearance in this case on April 20, 2012, in the Western District of Missouri.

Before trial, Rodriguez-Valencia moved to dismiss the indictment, invoking the Sixth Amendment right to a speedy trial. The district court denied the motion. (Rodriguez-Valencia waived any rights under the Speedy Trial Act.)

In March 2013, Rodriguez-Valencia pled guilty to conspiracy to distribute meth, reserving the right to appeal the denial of his speedy-trial motion. The district court sentenced him to 70 months' imprisonment.

## II.

Rodriguez-Valencia claims the district court erred in denying his motion to dismiss for "unconstitutional post-indictment delay" because the government negligently failed to submit an INTERPOL Red Notice for over six years after indictment. This court reviews "findings of fact on whether a defendant's right to a speedy trial was violated for clear error" and "legal conclusions de novo." *United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009).

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. **U.S. Const. amend. VI**; *Doggett v. United States*, 505 U.S. 647, 651 (1992). To determine whether the right has been violated, courts balance four factors: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of the four factors is

> either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* at 533.

A.

The first *Barker* factor—length of delay—requires a "double inquiry": "(1) whether the length of delay was presumptively prejudicial such that it triggers the *Barker* analysis, and, if triggered, (2) 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *Erenas-Luna*, 560 F.3d at 776, *quoting* **United States v. McGhee**, 532 F.3d 733, 739 (8th Cir. 2008). "As to the latter inquiry, 'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Id.*, *quoting* **United States v. Walker**, 92 F.3d 714, 717 (8th Cir. 1996).

The delay between Rodriguez-Valencia's indictment and arrest was six and a half years. The government concedes, and this court agrees, that this factor "unquestionably" favors Rodriguez-Valencia. *See* **Erenas-Luna**, 560 F.3d at 776 (three-year delay between indictment and arraignment weighs in defendant's favor); **United States v. Brown**, 325 F.3d 1032, 1035 (8th Cir. 2003) (three-year delay between indictment and initial appearance weighs in defendant's favor); **Walker**, 92 F.3d at 717 (37-month delay between indictment and arraignment weighs in defendant's favor). Because the length of delay is presumptively prejudicial, this court analyzes the other *Barker* criteria. **Doggett**, 505 U.S. at 652 ("In this case, the extraordinary 8½ year lag between Doggett's indictment and arrest clearly suffices to trigger the speedy trial enquiry; its further significance within that enquiry will be dealt with later."), 505 U.S. at 652 n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."); **Barker**, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); **United States v. Jeanetta**, 533 F.3d 651, 656 (8th Cir. 2009) ("A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors."); **Brown**, 325 F.3d at 1034 (If the

-6-

delay is presumptively prejudicial, "then the court conducts the speedy trial analysis by weighing four factors.").

B.

The second *Barker* factor—reason for the delay—requires determining "whether the government or the criminal defendant is more to blame." ***Doggett***, 505 U.S. at 651. Courts accord "different weights . . . to different reasons." ***Erenas-Luna***, 560 F.3d at 777 (internal quotations marks omitted). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." ***Barker***, 407 U.S. at 531. *See **Strunk v. United States***, 412 U.S. 434, 436-37 (1973).

Rodriguez-Valencia argues he did not knowingly cause the delay because he left the United States before he was indicted. The government counters that his disappearance after confessing to drug trafficking raises the presumption of flight to avoid prosecution. The district court did not make a finding on this issue. Over two years passed between Rodriguez-Valencia's confession to DEA agents and the indictment. This factor does not weigh against him.

Still, as the district court found, the government's negligence did not cause the over six-year delay. (Rodriguez-Valencia does not claim the government intentionally, or in bad faith, caused any delay.) *See **United States v. Shepard***, 462 F.3d 847, 864 (8th Cir. 2006) ("[T]here is no evidence that the Government intentionally caused any delay or filed pretrial motions to cause delay in order to gain a tactical advantage."). The Magistrate's Report and Recommendation, which the district court adopted in full, found that "the efforts of the Marshal's Service and the

Drug Enforcement Agency . . . require the conclusion that no speedy trial rights were violated." This court must accord "'special deference' [to a] district court's determination concerning whether the government was negligent." *Erenas-Luna*, 560 F.3d at 777, *quoting Doggett*, 505 U.S. at 652.

For six years, the government searched computer databases, public utilities, welfare benefits, insurance records, identification-cards, and driver's licenses; interviewed family, friends, and neighbors in Missouri and California; monitored phone records; requested fingerprints; prepared extradition paperwork; and coordinated with law enforcement in the United States and Mexico. Although most efforts revealed nothing relevant, the government pursued leads. After locating Rodriguez-Valencia's mother and sister, for example, Deputy Nance sought a court order for their phone records. After learning that Rodriguez-Valencia had previously lived with Cuevas and Jorge Rodriguez, Deputy Nance searched for them. And, in 2010, when Rodriguez-Valencia was stopped by officials in Nicaragua, the government prepared extradition paperwork. *See Doggett*, 505 U.S. at 652 (requiring the government to make a "serious effort" to find the defendant).

Rodriguez-Valencia contends that the government was negligent in failing timely to submit an INTERPOL Red Notice. This notice, he asserts, was likely to locate him because he "crossed the borders of different countries including Costa Rica, Honduras, and Nicaragua from 2005 to 2012." However, the government was unaware that Rodriguez-Valencia traveled to any INTERPOL country (aside from Mexico) until December 2010 when they learned of his apprehension in Nicaragua. (Mexico is an INTERPOL country, but the government used other means of searching for him there.)

This is a close case. The government could have submitted an INTERPOL Red Notice immediately upon learning of Rodriguez-Valencia's apprehension in Nicaragua. (In the interim, the government requested and received Rodriguez-

Valencia's fingerprints.) However, under this "very deferential" standard of review, this court agrees with the finding that the government was not negligent. *Erenas-Luna*, 560 F.3d at 777. *See Doggett*, 505 U.S. at 652 (finding negligence where the defendant was living and working *within the United States under his own name*); *United States v. Richards*, 707 F.2d 995, 997 (8th Cir. 1983) (the reason for the delay was that the government "was unable to locate the defendant," but "this delay was not chargeable to the government").

C.

The third *Barker* factor—defendant's assertion of the right—considers "whether in due course the defendant asserted his right to a speedy trial." *Erenas-Luna*, 560 F.3d at 778. There is no evidence that Rodriguez-Valencia knew of the pending charges. He cannot be faulted for failing to assert his right to a speedy trial. *Doggett*, 505 U.S. at 654 (where a defendant is unaware of the indictment, he cannot "be taxed for invoking his speedy trial right only after his arrest"). This factor does not weigh against him. *Richards*, 707 F.2d at 997 (where the defendant was "unaware of the indictment before his arrest . . . his failure to assert his right to a speedy trial until [after arrest] cannot be weighed against him").

D.

The final *Barker* factor—prejudice—considers "whether the defendant suffered prejudice as a result of the delay." *Erenas-Luna*, 560 F.3d at 778, *quoting Walker*, 92 F.3d at 719. This factor is assessed "'in the light of the interests of defendants which the speedy trial right was designed to protect. . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Id.*, *quoting United States v. Aldaco*, 477 F.3d 1008, 1019 (8th Cir. 2007), *quoting Barker*, 407 U.S. at 532.

Rodriguez-Valencia has not shown actual or specific prejudice for any interest the speedy trial right protects. He was not incarcerated pretrial. Unaware of the indictment, he did not suffer anxiety or concern before arrest. He does not allege impaired defense.

Rodriguez-Valencia argues that no affirmative demonstration of actual or specific prejudice is required. *Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam) ("Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial."). Because of the length of delay, he contends the presumption of prejudice entitles him to recovery. *See Doggett*, 505 U.S. at 655 ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."); *Richards*, 707 F.2d at 997 (A delay that is "inordinately lengthy" may require an automatic dismissal).

However, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. at 656. "The extent to which a defendant must demonstrate prejudice under this factor depends on the particular circumstances." *Erenas-Luna*, 560 F.3d at 778. *See Doggett*, 505 U.S. at 656 (The court must consider "the role that presumptive prejudice should play in the disposition of [the defendant's] speedy trial claim."). "A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant." *Erenas-Luna*, 560 F.3d at 778-79. *See Doggett*, 505 U.S. at 657 ("If the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense."). "Where the government has been negligent, however, prejudice can be presumed if there has been an excessive delay." *Erenas-Luna*, 560 F.3d at 779. *See Doggett*, 505 U.S. at 657 ("To be sure, to warrant

granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice.”).

Here, the delay was “extraordinary.” **Barker**, 407 U.S. at 533. However, the government pursued Rodriguez-Valencia with reasonable diligence from indictment to arrest. He does not show actual or specific prejudice. His speedy trial claim fails. *See **Doggett***, 505 U.S. at 657; ***Erenas-Luna***, 560 F.3d at 778-79; ***Walker***, 92 F.3d at 719 (“We have concluded above that the government pursued Walker with reasonable diligence. That conclusion requires us to reject Walker’s speedy trial claim, unless Walker offers proof of specific prejudice.”).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____