# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3108
_____

United States of America

*Plaintiff - Appellee*

v.

Adan Margritos Flores-Lagonas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 23, 2020
Filed: April 2, 2021

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

SMITH, Chief Judge.

Adan Margritos Flores-Lagonas pleaded guilty to being a felon in possession of a firearm and ammunition in June 2019. *See* 18 U.S.C. § 922(g)(1). Law enforcement was investigating a drug trafficking operation when Flores-Lagonas fled the scene of a controlled delivery. Officers then arrested and searched him. Evidence obtained in the search implicated him in the drug trafficking. Flores-Lagonas was

indicted in July 2015. Nearly four years elapsed between his indictment and his conditional guilty plea.

Flores-Lagonas moved to suppress evidence obtained in the search on Fourth Amendment grounds, moved to dismiss the indictment for alleged police perjury, and moved to dismiss the indictment for Sixth Amendment and Speedy Trial Act violations. The district court[1] denied each motion. On appeal, Flores-Lagonas argues that the district court (1) erred in concluding that there was no Fourth Amendment violation, (2) erred in denying his motion to dismiss for police perjury, and (3) erred in concluding that there was no Sixth Amendment or Speedy Trial Act violation. We affirm.

I. *Background*

Flores-Lagonas directed an individual to meet him and deliver methamphetamine. Flores-Lagonas did not know, however, that the individual was a cooperating individual (CI). On May 13, 2015, police set up a controlled delivery between Flores-Lagonas and the CI in a shopping center parking lot in Rochester, Minnesota.[2] The CI, under police surveillance, was to deliver four kilograms of methamphetamine to Flores-Lagonas. When the delivery time neared, Flores-Lagonas arrived in the parking lot by car, accompanied by Perez-Juarez and another passenger.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]Flores-Lagonas caught the police's attention on March 31, 2015, when police stopped the car of Jonathan Perez-Juarez. Flores-Lagonas was a passenger in the car. Perez-Juarez had an outstanding warrant and was arrested on the scene. During that stop, police found a loaded handgun, a loaded magazine, and 5.8 grams of methamphetamine in the car. They found an additional 3.6 grams on Perez-Juarez. Perez-Juarez is a co-defendant in this case.

Law enforcement stationed surveillance units in various places around the parking lot. Officer Brian Green and three other law enforcement officers were positioned around the corner from the parking lot in an unmarked squad vehicle. The officers in that vehicle could not see the parking lot, but they received information from the surveillance officers via phone and radio. Sergeant James Schueller and another officer were stationed in the parking lot in an unmarked Jeep Grand Cherokee.

Surveillance officers observed Flores-Lagonas and Perez-Juarez exiting a blue Chrysler Pacifica and entering a Target store. Inside Target, Flores-Lagonas gave Perez-Juarez a cell phone. Perez-Juarez used the phone to communicate with the CI. Perez-Juarez and the CI coordinated a meeting in the parking lot

While Perez-Juarez approached the CI's car by foot, surveillance officers observed Flores-Lagonas returning to the Pacifica. After getting into the car, he drove slowly around the parking lot before parking across from where the CI and Perez-Juarez were meeting. A police surveillance camera began capturing the incident at this point.[3] Perez-Juarez then left the CI and walked back towards the Pacifica.

Before Perez-Juarez reached the Pacifica, Officer Green and his team received instructions to arrest Flores-Lagonas and his passenger. The officers pulled up to the Pacifica in the unmarked squad car and emerged in unison with their weapons drawn.[4] In the meantime, Sergeant Schueller had driven the Jeep towards the other side of the Pacifica to block its path. Officer Green later testified that he was wearing a marked

---

[3]The surveillance camera was positioned in the adjoining parking lot, and its view of the events was partially obstructed by a sign and other vehicles.

[4]The weapons are not visible in the surveillance video, but it is undisputed that the officers had their weapons drawn as they approached the Pacifica.

tactical vest with the word "Police" written across the front. Sergeant Schueller testified that at least two of the officers were wearing marked tactical vests.[5] Both Officer Green and Sergeant Schueller testified that the officers who emerged from the unmarked car loudly identified themselves as law enforcement.[6]

Seeing the officers approach, Flores-Lagonas attempted to flee in the Pacifica. On his way out of the parking lot, his vehicle struck Sergeant Schueller's Jeep. A car chase ensued. Several officers, including Sergeant Schueller, pursued the Pacifica. Sergeant Schueller testified that he turned on his hazard lights, sounded his horn, and activated emergency police lights as he pursued Flores-Lagonas. He also testified that Flores-Lagonas accelerated to 90 miles per hour in a 55 miles-per-hour zone and that he saw Flores-Lagonas discard what appeared to be "white powder" out of the car window. *Id.* at 45. Flores-Lagonas eventually lost control of his car, which skidded off the road and into a field. Sergeant Schueller and his partner got out of their vehicle, drew their weapons, and yelled commands as they approached the Pacifica.[7] Flores-Lagonas then exited the Pacifica and began to run across the field. Sergeant Schueller pursued Flores-Lagonas by foot and ultimately apprehended him.

After other officers arrived on the scene, Sergeant Schueller conducted a pat-down of Flores-Lagonas and found two loaded handgun magazines. The other

---

[5]Only one officer is fully visible in the surveillance footage; he appears to be wearing a police uniform and badge.

[6]Officer Green said he shouted "Stop. Police." Crim. Mots. Hr'g Trans. at 22, *United States v. Flores-Lagonas*, No. 0:15-cr-00210-MJD-DTS (D. Minn. 2019), ECF No. 618. Sergeant Schueller testified that the officers said "something to the effect of, [']You're under arrest, put your hands up, sheriff's office,['] those types of commands." *Id.* at 40.

[7]Sergeant Schueller testified that he shouted, "Sheriff's Office. You're under arrest. Get on the ground." *Id.* at 48.

officers searched the Pacifica and recovered a handgun and another loaded magazine by the driver's seat. Flores-Lagonas, who was a convicted felon at the time, admitted to possessing the gun.

Flores-Lagonas was indicted on July 14, 2015, for conspiracy to distribute and intent to possess methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1); and carrying and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Nearly four years later, on June 4, 2019, Flores-Lagonas pleaded guilty. Because of the lengthy procedural background in this case, we recite only the dates and events most relevant to this appeal.

Flores-Lagonas moved to suppress the evidence found in his car, arguing that the officers lacked reasonable suspicion or probable cause to stop, arrest, and search him. The court conducted an evidentiary hearing on October 14, 2015. Officer Green and Sergeant Schueller testified. The magistrate judge issued a report and recommendation ("report"), recommending the denial of the motion to suppress. The magistrate judge concluded that the officers had reasonable suspicion to stop Flores-Lagonas in the parking lot but noted that the Pacifica did not actually stop. The magistrate judge also concluded that even in the absence of reasonable suspicion for the initial stop, the officers eventually had probable cause to arrest Flores-Lagonas on multiple grounds, including his "attempt to flee from law enforcement and subsequent traffic violations." *United States v. Flores-Lagonas*, No. 0:15-cr-00210-MJD-DTS, 2015 WL 9313516, at *5 (D. Minn. Nov. 12, 2015), *report and recommendation adopted*, 0:15-cr-00210-MJD-DTS, 2015 WL 9294288 (D. Minn. Dec. 21, 2015). The district court adopted the report in its entirety and denied the motion to suppress.

Between August 2015 and January 2016, Flores-Lagonas's attorney moved for several continuances for personal exigencies.[8] The court granted the motions and excluded the relevant time under the Speedy Trial Act ("Act").[9]

On February 1, 2016, the government filed a superceding indictment adding three new co-defendants: Nicole Angela Davis, Epifanio Salgado Flores, and Felix Nacedo Flores. One month later, Flores-Lagonas filed a pretrial motion for severance. Salgado Flores was the last of the new co-defendants to make his initial appearance; he appeared on March 29, 2016. The government and Salgado Flores filed various pretrial motions in April 2016. Flores-Lagonas withdrew his motion for severance in early May 2016. On May 4, 2016, the government moved to exclude time under the Speedy Trial Act. Flores-Lagonas did not object. As of that date, the pretrial motions filed by the government and Salgado Flores were still pending. The district court granted the motion on May 13, 2016, and excluded the time from February 1, 2016, through May 13, 2016, from the calculation of the Act's seventy-day trial deadline.

Salgado Flores's pretrial motions were still pending when he pleaded guilty on June 6, 2016. The government and Flores-Lagonas filed motions in limine on June 6, 2016, and June 7, 2016, respectively. The district court ruled on those motions on June 17, 2016.

---

[8]The attorney was hospitalized with a serious illness in August 2015; his father passed away in September 2015; and he had several medical appointments in January 2016.

[9]Under the Act, a federal criminal defendant must be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). "Certain days, however, may be excluded from the seventy-day calculation." *United States v. Yerkes*, 345 F.3d 558, 561 (8th Cir. 2003). 18 U.S.C. § 3161(h) covers the periods of time that a judge shall exclude.

Trial was set to begin on June 20, 2016. That morning, however, the district court granted Flores-Lagonas's motion for a competency evaluation after Flores-Lagonas "failed to respond to the [c]ourt's comments and spoke incoherently about the jurisdiction of the [c]ourt." Order Granting Def.'s Mot. Psych. Eval. at 1, *United States v. Flores-Lagonas*, No. 0:15-cr-00210-MJD-DTS (D. Minn. 2019), ECF No. 302. Flores-Lagonas's counsel had "represent[ed] that he [was] unable to communicate with [Flores-Lagonas] based on [Flores-Lagonas's] increasing insistence on only discussing incoherent jurisdictional issues."[10] *Id.* at 1–2.

Flores-Lagonas went through multiple competency proceedings over the next year and a half. The magistrate judge twice found him incompetent to stand trial. Each time, he was committed to the custody of the Attorney General to restore his competency. On December 4, 2018, after a third competency proceeding, the magistrate judge determined that Flores-Lagonas was mentally competent to stand trial.

Over the course of his competency proceedings, Flores-Lagonas requested and was appointed new counsel. His new attorney moved to dismiss the superceding indictment, arguing that the court should have suppressed evidence and alleging that Officer Green and Sergeant Schueller provided false testimony during the suppression hearing. The district court construed this as a motion to reconsider its ruling on the suppression issue:

---

[10]The initial motion for a competency determination—filed by Flores-Lagonas's attorney on March 7, 2016—explained that Flores-Lagonas told his attorney that he is a sovereign citizen, that "an agency which he describes a[s] the 'Federal Dot' will investigate his case at the appellate level," and that he "believes that this agency is certain to dismiss his case." Def.'s Mot. Psych. Eval. at 2, *United States v. Flores-Lagonas*, No. 0:15-cr-00210-MJD-DTS (D. Minn. 2019), ECF No. 169. Flores-Lagonas's attorney orally renewed his motion for a competency determination on June 20, 2016.

> The [c]ourt has already ruled on the suppression issues that Defendant now raises—including whether law enforcement had reasonable suspicion to justify the *Terry* stop and whether law enforcement developed multiple independent bases to stop Defendant during the encounter. Thus, Defendant is, in fact, moving the [c]ourt to reconsider its previous order on the motion to suppress.

*United States v. Flores-Lagonas*, No. 0:15-cr-00210-MJD-DTS, 2019 WL 7495401, at *1 (D. Minn. May 17, 2019). It denied the motion after concluding that Flores-Lagonas provided no persuasive basis for granting reconsideration.

On December 6, 2018, two days after the court found him competent to stand trial, Flores-Lagonas filed a motion to exclude time through March 4, 2019. The motion explained that he and his new attorney needed time to confer regarding the competency finding and to prepare for trial. The court granted the motion. On January 18, 2019, Flores-Lagonas again moved to exclude time through April 22, 2019. The court granted this motion as well.

On May 21, 2019, Flores-Lagonas filed a motion to dismiss based on Sixth Amendment and Speedy Trial Act violations. He argued that his prior counsel violated his right to a speedy trial by requesting continuances and that he coerced Flores-Lagonas into signing a statement supporting the exclusion of time. Also on May 21, 2019, Flores-Lagonas moved to exclude more time under the Act in order to further prepare for trial.

The district court denied the motion, concluding that no Speedy Trial Act or Sixth Amendment violations occurred. It rejected Flores-Lagonas's argument that his prior counsel violated his right to a speedy trial by filing motions for continuances and coercing him into signing waivers of his right to a speedy trial. The court explained that "there has been no time excluded due to a motion for a continuance by Defendant's previous defense counsel, because Defendant's speedy trial clock was

reset with the filing of the Superseding Indictment." *United States v. Flores-Lagonas*, No. 0:15-cr-00210-MJD-DTS, 2019 WL 2249724, at *3 (D. Minn. May 24, 2019). It also rejected his argument that the government violated his right to a speedy trial, finding that the government "diligently sought to take this case to trial" and that "[t]here is no evidence that the Government has sought to delay this case." *Id.*

The court also denied Flores-Lagonas's request to exclude more time because of the "substantial length of time that this case has been pending." *Id.* The court set trial for June 17, 2019.

On June 4, 2019, Flores-Lagonas pleaded guilty to one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition.[11] He preserved his right to appeal the denial of his motion to suppress and motions to dismiss. He received a sentence of 156 months' imprisonment. Flores-Lagonas timely appeals.

## II. *Discussion*

Flores-Lagonas argues that the district court erred in denying his motion to suppress, his motion to dismiss based on officer perjury, and his motion to dismiss for Sixth Amendment and Speedy Trial Act violations.

## A. *Fourth Amendment Claims*

Flores-Lagonas maintains that the district court should have suppressed the evidence found in his car because the officers violated his Fourth Amendment rights in obtaining that evidence. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[11]The government dismissed the two other counts—conspiracy to distribute and intent to possess methamphetamine and carrying and using a firearm during and in relation to a drug trafficking crime.

-9-

searches and seizures." U.S. Const. amend. IV. "[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). "When reviewing the denial of a motion to suppress, we review questions of law de novo and the district court's factual findings for clear error." *United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014) (quotation omitted). We will affirm the district court's decision "unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *United States v. Stachowiak*, 521 F.3d 852, 854 (8th Cir. 2008) (quotation omitted).

We first address whether the officers seized Flores-Lagonas in the parking lot. A Fourth Amendment seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). A seizure does not occur unless the individual actually submits to the "show of authority." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). It is not sufficient for the police to only *attempt* to stop the individual; police must *actually* stop him. *Id.* at 626 ("The word 'seizure' . . . . does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."); *see also Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) ("[T]here is no seizure without actual submission." (alteration in original) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007))).

The officers did not actually stop Flores-Lagonas in the parking lot. They announced themselves and approached his vehicle with their weapons drawn, but Flores-Lagonas did not submit to this show of authority. Quite the opposite; he sped away. Because the officers merely attempted to stop Flores-Lagonas as he continued to flee, *see Hodari D.*, 499 U.S. at 626, they did not seize him in the parking lot. Put

-10-

simply, there was no stop. Without a stop, a reasonable suspicion analysis is unnecessary.

Next, Flores-Lagonas argues that the officers did not have probable cause to arrest him. We disagree. "A police officer may, consistent with the Fourth Amendment, arrest someone without a warrant if the officer has probable cause to believe the person has committed a crime." *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014). This is so even "[i]f [the] officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Peterson*, 754 F.3d at 598 (quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

We have consistently held that a defendant's response to an arrest or *Terry* stop—even an invalid one—may constitute independent grounds for arrest. *See United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015); *United States v. Blackmon*, 662 F.3d 981, 985–86 (8th Cir. 2011); *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006). In *Smith*, for example, we concluded that the defendant's "resistance by fleeing the scene provided independent grounds for his arrest" after he "fled from the scene of a lawful traffic stop, led officers on a high-speed chase, and abandoned the vehicle." 789 F.3d at 929 (quotation omitted).

Flores-Lagonas's actions furnished independent grounds for arrest. It is undisputed that he sped off the moment the officers tried to stop him. The government argues that the officers had probable cause to arrest him for the following violations of Minnesota law: (1) fleeing a peace officer by motor vehicle under Minn. Stat.

§ 609.487(3); (2) fleeing a police officer on foot under Minn. Stat. § 609.487(6); (3) failing to stop after a collision under Minn. Stat. § 169.09(2); and (4) reckless driving under Minn. Stat. § 169.13(1)(a). We conclude that Flores-Lagonas's fleeing the police and reckless driving provided sufficient probable cause to arrest.

Flores-Lagonas fled from police officers twice—first by car and then by foot when his car went off the road. This gave the officers probable cause to believe that he violated §§ 609.487(3) and (6). Flores-Lagonas responds that he did not know they were officers and, as a result, that his flight did not give them probable cause to arrest him. He contends that he fled because he feared for his life when he saw unknown men with weapons drawn. Even if true, Flores-Lagonas's perception of the officers is not relevant because we draw our conclusion from the facts known to the arresting officer at the time of the arrest. *See Devenpeck*, 543 U.S. at 152. The officers knew the following facts at the time of arrest: they were acting in the lawful discharge of their official duties; they identified themselves as law enforcement; they shouted at Flores-Lagonas to stop; and they were wearing either police attire, visible police badges, or tactical vests with the word "Police" written across the front. Further, Officer Green and Sergeant Schueller each testified that Flores-Lagonas looked directly at them before driving away. The district court adopted these findings by the magistrate judge, and Flores-Lagonas cites no evidence suggesting that the court clearly erred in doing so.

The officers also had probable cause to arrest Flores-Lagonas for reckless driving, in violation of § 169.13(1)(a). Officer Green and Sergeant Schueller testified that when exiting the parking lot, Flores-Lagonas collided with the Jeep driven by Sergeant Schueller. Police surveillance footage corroborated the collision. Sergeant Schueller also testified that Flores-Lagonas drove over 90 miles per hour, made "[s]everal evasive maneuvers," and "[s]werv[ed] in between . . . cars." Crim. Mots. Hr'g Trans. at 44. Ultimately, Flores-Lagonas lost control of the car, which skidded

off the side of the road, "went about 15 to 20 feet out into [a] field and then came to a stop." *Id.* at 46–47.

Considering the totality of the circumstances and drawing on the facts known to the officers at the time of the attempted stop, car chase, and ultimate arrest, we hold that the officers had probable cause to believe Flores-Lagonas was engaged in criminal activity. Consequently, the arrest and subsequent search of Flores-Lagonas's vehicle did not violate his Fourth Amendment rights. Therefore, the district court did not err by denying his motion to suppress the guns and ammunition.

B. *Perjury Claims*

Flores-Lagonas argues that the district court erred in denying his motion to dismiss. The motion alleged that Officer Green and Sergeant Schueller perjured themselves during the suppression hearing. The district court construed this as a motion to reconsider its ruling on the suppression issue. We review a district court's decision to reconsider its ruling for an abuse of discretion. *United States v. Laws*, 819 F.3d 388, 396 (8th Cir. 2016). Flores-Lagonas urges us to view his motion as a motion to dismiss, arguing that he makes due process arguments that his first attorney did not raise. We review the denial of a motion to dismiss de novo. *United States v. Turner*, 842 F.3d 602, 604 (8th Cir. 2016). Because Flores-Lagonas's perjury claims fail under either standard of review, we affirm the district court's denial.[12]

Flores-Lagonas argues that he suffered a due process violation because the officers provided false statements during his suppression hearing. "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go

---

[12]We do not express an opinion on whether a pretrial motion to dismiss could be granted for alleged perjury at a pretrial suppression hearing.

uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted). "[K]nowing use of perjured testimony requires that a conviction be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Runge,* 593 F.2d 66, 73 (8th Cir. 1979) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). This is true even if false testimony "merely impeaches a witness'[s] credibility." *Id.*

> To establish a due process violation based on the prosecutorial use of false testimony, a defendant must show that "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict."

*United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007) (quoting *United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005)). This means that the defendant must show not only that there was an actual perjury, but also that the government knew or should have known about it. *Id.* Additionally, the defendant must show that the perjury was material. *See United States v. Bigeleisen*, 625 F.2d 203, 208 (8th Cir. 1980) ("Materiality is the key, and the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (cleaned up)).

Flores-Lagonas presents no convincing evidence that the officers perjured themselves during the suppression hearing. He principally argues that the surveillance footage does not show what the officers described in their testimony. But that does not perforce render their assertions false. He does not show that the officer's testimony and the video conflict in any meaningful way. The surveillance video provided only a limited view of the events in the parking lot.

The only finding that potentially conflicts with the surveillance video is the magistrate judge's conclusion that "the officers were wearing marked tactical vests

-14-

with the word 'Police' clearly displayed across the front." *Flores-Lagonas*, 2015 WL 9313516, at *5. In the video, the only clearly visible officer emerging from the car does not appear to be wearing such a vest. This does not prove perjury, however. As the magistrate judge explained elsewhere in the report, Sergeant Schueller testified that *at least two* members of the primary arrest team wore the vests. He stated, "I believe they were. I know at least two of them that I saw immediately were wearing them. I can't for sure say all four were . . . ." Crim. Mots. Hr'g Trans. at 39–40. Further, Officer Green testified that *he* was wearing "a tactical vest . . . that said, 'Police' across the front in large white letters." *Id.* at 22. He did not say that they all were.

## C. *Speedy Trial Claims*

Finally, we turn to Flores-Lagonas's speedy-trial claims. He alleges a violation of his Sixth Amendment right to a speedy trial because approximately four years passed between his indictment and guilty plea. He also alleges a violation of his rights under the Speedy Trial Act. We address each claim in turn, reviewing the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Aldaco*, 477 F.3d 1008, 1016 (8th Cir. 2007).

### 1. *Sixth Amendment*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. This "right 'attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences.'" *Aldaco*, 477 F.3d at 1019 (quoting *United States v. Perez-Perez*, 337 F.3d 990, 995 (8th Cir. 2003)). Courts balance the following four factors to determine whether a defendant's Sixth Amendment right to a speedy trial was violated: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The first factor favors Flores-Lagonas. "To trigger speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed a line dividing ordinary from presumptively prejudicial delay." *Aldaco*, 477 F.3d at 1019 (quotations omitted). We have held that a delay of one year is presumptively prejudicial. *United States v. Jeanetta*, 533 F.3d 651, 656 (8th Cir. 2008); *see also United States v. Mallett*, 751 F.3d 907, 913–14 (8th Cir. 2014) ("assum[ing] the nearly seventeen-month delay between [the defendant's] original indictment and trial was presumptively prejudicial"). The government concedes the four-year delay in this case crosses the line from ordinary to presumptively prejudicial.

"The second factor involves determining who is responsible for the delay, the defendant or the government." *United States v. Walker*, 92 F.3d 714, 717 (8th Cir. 1996). We must "consider the reasons for the delay and evaluate whether the government or the criminal defendant is more to blame." *Mallett*, 751 F.3d at 914 (quoting *United States v. Summage*, 575 F.3d 864, 876 (8th Cir. 2009)). There typically will be no Sixth Amendment violation when the defendant "was responsible for most of the delay, which was occasioned by his motions to suppress evidence, for a competency evaluation, and to dismiss." *United States v. Walker*, 840 F.3d 477, 485 (8th Cir. 2016). When assessing a delay caused by the government, we look at the government's justification for the delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

-16-

The defense caused most of the delay in this case. The competency evaluation process alone—which included three competency hearings—took over two years. Flores-Lagonas also requested multiple continuances. Two days after the district court found him competent to stand trial, on December 6, 2018, he moved to exclude time until March 4, 2019, so that he and his new attorney could confer and prepare for trial. He again moved to exclude time from January 18, 2019, through April 22, 2019, for the same reason. The district court granted both motions. When Flores-Lagonas moved for yet another continuance in May 2019, however, the district court denied the request. Flores-Lagonas also filed many other pretrial motions.

Flores-Lagonas argues that his first attorney caused any delay for which the defense is responsible. His first attorney sought continuances for his own medical and personal reasons, but Flores-Lagonas acquiesced to those continuances. He presents no evidence that his lack of objection was attributable to coercion by counsel or to government action.

The government also caused some delay in this case. Specifically, the superceding indictment added three new co-defendants on February 1, 2016, nearly seven months after Flores-Lagonas was first indicted. But it had a valid reason, and such a reason "should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. The addition of several co-defendants in this multi-count drug conspiracy is a valid reason. There is no evidence to suggest that the government attempted to delay the trial in an effort to hamper the defense or that it was negligent in obtaining indictments against the three new co-defendants.[13] In fact, as the government points

[13]Furthermore, we "must accord special deference to a district court's determination concerning whether the government was negligent." *United States v. Rodriguez-Valencia*, 753 F.3d 801, 806 (8th Cir. 2014) (cleaned up). On this issue, the district court expressly concluded the following: "The Government has diligently sought to take this case to trial. There is no evidence that the Government has sought to delay this case." *Flores-Lagonas*, 2019 WL 2249724, at *3.

out, it would have been ready for trial in June 2016. But, Flores-Lagonas was not competent to proceed at that point. If the trial had occurred in June 2016, about eleven months would have elapsed between his initial indictment and the trial. Accordingly, we conclude that the second factor cuts against Flores-Lagonas because he caused most of the delay, and the government's delay was reasonably justified.

The third factor, assertion of the right, favors Flores-Lagonas. He asserted his right to a speedy trial when he filed his motion to dismiss for speedy-trial violations on May 21, 2019. We note, however, that Flores-Lagonas simultaneously requested another continuance.

We assess the fourth factor, prejudice, "in the light of the interests of defendants which the speedy trial right was designed to protect." *Rodriguez-Valencia*, 753 F.3d at 808 (quotations omitted). Promptly bringing defendants to trial prevents excessive incarceration before trial, with its attendant evils, and avoids harming the defendant's ability to fairly defend himself due to the potential loss of evidence and witnesses. *See Barker*, 407 U.S. at 532–33. Flores-Lagonas asserts that he was prejudiced because of oppressive pretrial incarceration, his anxiety, and impairment to his defense. But these assertions lack specific facts.

We will therefore review Flores-Lagonas's claim as involving "presumptive prejudice," which the Supreme Court described as follows:

> [W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett v. United States*, 505 U.S. 647, 655–56 (1992) (citation omitted). When a defendant establishes only presumptive prejudice, but not particularized prejudice, he can still prove a Sixth Amendment violation if he has help from the other *Barker* factors. For example, a defendant may be entitled to relief if he has shown presumptive prejudice and that the government's negligence caused the delay. *Id.* at 658 ("When the Government's negligence causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." (cleaned up)); *see also United States v. Erenas-Luna*, 560 F.3d 772, 780 (8th Cir. 2009) (holding that prejudice could be presumed because the government's negligence caused the three-and-a-half-year delay). In cases without government negligence, however, we have required the defendant to show actual or specific prejudice. *Rodriguez-Valencia*, 753 F.3d at 808.[14] As discussed, Flores-Lagonas has not made such a showing.

Four years is an undeniably long time to await trial in detention. Still, we conclude that an analysis of the *Barker* factors favors the government in this case. Flores-Lagonas caused most of the delay, nearly half of which was due to his competency proceedings. Further, he cannot rely on presumptive prejudice alone and has failed to show actual or specific prejudice. These factors outweigh the length of the delay and his assertion of the right.

## 2. *Speedy Trial Act*

The Speedy Trial Act requires that a federal criminal defendant be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever

---

[14]We acknowledge that the present case is distinguishable from *Rodriguez-Valencia* because, unlike Flores-Lagonas, the defendant in that case was not detained for the duration of the delay. *Rodriguez-Valencia*, 753 F.3d at 808. Still, Flores-Lagonas does not allege how this pretrial detention prejudiced him in any particularized way.

is later. 18 U.S.C. § 3161(c)(1). The Act provides that certain "periods of delay shall be excluded . . . in computing the time within which the trial . . . must commence." *Id.* § 3161(h). These excluded periods include the following: "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant"; "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"; "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial"; "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"; and

> [a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel . . . , if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

*Id.* § 3161(h)(1)(A), (1)(D), (4), (6), (7)(A).

Flores-Lagonas argues that the district court erred when it excluded time for his first attorney's continuances, the addition of co-defendants in the superceding indictment, and his competency proceedings. This argument lacks merit because each of these periods of delay falls under § 3161(h) of the Act. First, a party's continuances are properly excluded so long as the judge ruling on the motion "find[s] that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

Judges must consider certain factors in making this determination, including "whether the failure to grant the continuance 'would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.'" *United States v. Harlan*, 960 F.3d 1089, 1093 (8th Cir.

-20-

2020) (alteration in original) (quoting 18 U.S.C. § 3161(h)(7)(B)(iv)). Here, the court ruled on each continuance after receiving a detailed explanation from Flores-Lagonas's attorney. These explanations gave justifications for the continuances as necessary to effectively represent his client. The record reveals that the court had before it, and considered, sufficient information to conclude "that the ends of justice served . . . outweigh[ed] the best interests of the public and [Flores-Lagonas]." 18 U.S.C. § 3161(h)(7)(A).

Second, the addition of three newly indicted co-defendants did not violate Flores-Lagonas's right to a speedy trial. We have held:

> Pursuant to § 3161(h)(7), when a newly indicted or arraigned defendant is joined with a defendant whose speedy trial clock has already started running, the latter defendant's speedy trial clock will be reset so that it reflects the speedy trial clock of the newly added codefendant. Thereafter, all of the defendants are subject to one controlling speedy trial clock and any time periods excluded from the speedy trial calculations for one defendant will be applicable to the other defendants.

*United States v. Lightfoot*, 483 F.3d 876, 885–86 (8th Cir. 2007) (citation omitted). "This insures that speedy trial considerations will not hamper the joinder of defendants who have different amounts of time left on their respective speedy trial clocks." *Id.* at 886. Flores-Lagonas's speedy-trial clock reset on February 1, 2016, when the superceding indictment was filed. On that date, his clock became tied to those of his newly added co-defendants. His clock again reset on March 29, 2016, when the last of the three new co-defendants made his initial appearance. In addition, any pretrial motions by his co-defendants had the effect of pausing the communal clock. *See* 18 U.S.C. § 3161(h)(1)(D).

Finally, the court properly excluded the time that elapsed during Flores-Lagonas's competency proceedings. The Act clearly states that the court shall exclude

-21-

"delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." *Id.* § 3161(h)(1)(A). The court also shall exclude "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." *Id.* § 3161(h)(4). The district thus correctly excluded the time from June 20, 2016, when it granted the motion for a competency determination, through December 4, 2018, when Flores-Lagonas was restored to competency.

After excluding all times permitted by the Act, seventy days had not run at the time Flores-Lagonas pleaded guilty.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court opinion.

_____