# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-1848
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Andrew Wolter

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota
_____

Submitted: February 15, 2024
Filed: August 13, 2024
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

GRASZ, Circuit Judge.

Before his conviction for bank robbery, Robert Wolter filed a motion to dismiss his indictment, arguing the government violated his right to a speedy trial under the Speedy Trial Act (STA) and the Sixth Amendment. The district court[1]

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

denied the motion, finding some delays in commencement of the trial were excludable under the STA and no evidence showed the government either negligently or intentionally caused delays. Wolter appeals, challenging the district court's determination. We affirm.

## I. Background

On January 15, 2019, Wolter robbed a bank in Bismarck, North Dakota. Upon entering the bank, Wolter announced, "this is a bank robbery," and he led the bank's employees to believe he may be possessing a firearm. Wolter then took approximately $6,800 from the bank and fled. On February 5, 2019, Wolter tried to take a flight from Newark, New Jersey, to Ghana, Africa. Because Wolter failed to declare the entire amount of cash in his possession, he was arrested for smuggling bulk cash. On February 21, 2020, those charges were dismissed and Wolter was arrested for bank robbery. On July 23, 2020, Wolter was arraigned in North Dakota for a single count of bank robbery.

After his arraignment, Wolter—with help from counsel—filed several motions to continue the trial, which significantly delayed his trial date. On August 25, 2020, Wolter filed his first motion to continue, which reset his trial date. Wolter moved for continuances again on November 6, 2020, and January 25, 2021, which finally led to the trial date being set for May 25, 2021. With every continuance, Wolter signed an informed consent document recognizing he understood the delays were excluded under the STA.

On April 30, 2021, Wolter—with help from counsel—moved for a psychological evaluation. On the same day, the district court granted the motion. In response, the government moved to amend the order granting a psychological evaluation to allow the Bureau of Prisons to transport Wolter to a nonmedical

facility.[2]  This amendment to the original psychological evaluation order was granted on May 18, 2021.

Wolter's examination period stretched from September 10, 2021, to May 5, 2022, during which time he was transported to and from different facilities to undergo a series of tests.[3]  After several requests and motions to continue by Wolter's counsel, the trial date was set for December 13, 2022.  One month before the scheduled trial date, the district court granted Wolter's motion to represent himself pro se.

Two weeks before trial, Wolter moved pro se to dismiss the indictment claiming his right to a speedy trial was violated under the STA and the Sixth Amendment because of the lengthy delays.  On December 12, 2022, the district court denied the motion to dismiss.  Specifically, the district court found that, at most, only 31 days of non-excludable time counted toward the STA.  In this calculation, the district court counted the days between July 25, 2020, through August 25, 2020, but it did not count the transportation delay.

With respect to the Sixth Amendment argument, the district court found no evidence the government acted negligently or intentionally sought delays and it attributed most of the delays to Wolter.  The district court further found Wolter had not suffered any demonstrable prejudice because of the delays.  On January 11, 2023,

---

[2]The government sought to have the evaluation completed at a nonmedical facility based on information from the Bureau of Prisons that an evaluation at a medical facility would take 13 to 18 weeks to complete, while an evaluation at a nonmedical facility would take 11 weeks.

[3]On October 10, 2023, Wolter filed a Motion to Supplement the Record with the Individual Custody/Detention Report which contains the confirmation of the dates of transportation, including when requests for transportation were issued.  We grant the motion.

a jury convicted Wolter of bank robbery.[4]  The district court sentenced him to 60 months of imprisonment, with three years of supervised release.  Wolter timely filed a notice of appeal.

## II.  Analysis

Wolter raises two arguments on appeal.  First, he argues the district court erred by finding the transportation delays during the psychological examination were entirely excludable under the STA.  Second, he contends the district court did not accurately consider his Sixth Amendment argument that his right to a speedy trial was violated by the delays before trial.  We review "the district court's findings of fact for clear error and its legal conclusions de novo."  *United States v. McGhee*, 532 F.3d 733, 736 (8th Cir. 2008).  We review "Sixth Amendment and Speedy Trial Act challenges for delay . . . independently of one another."  *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002).

### A.  The Speedy Trial Act

Under the STA, a trial must "begin within 70 days of the filing of an information, indictment or the defendant's initial appearance . . . ."[5]  *Zedner v. United States*, 547 U.S. 489, 497 (2006) (citing 18 U.S.C. § 3161(c)(1)).  But there are exceptions to this rule.  For example, specific periods of delay are excluded for delay caused by pretrial motions, 18 U.S.C. § 3161(h)(1)(D); delay resulting from any proceeding to determine the defendant's mental capacity, *id.* § 3161(h)(1)(A);

---

[4]On December 13, 2022, the district court issued a continuance because of a winter storm that caused four government witnesses to be unavailable.  The trial occurred on January 9, 2023.

[5]The STA's 70-day calculation began on July 23, 2020, which was when Wolter was arraigned in the court in which the indictment was pending.  *See United States v. Grimes*, 702 F.3d 460, 465–67 (8th Cir. 2012) (holding STA calculations commence on the date a defendant appears in the court in which the indictment was filed); 18 U.S.C. § 3161(c)(1).

and delay resulting from the transportation of the defendant to and from places of examination, except any time consumed in excess of 10 days is presumed unreasonable, *id.* § 3161(h)(1)(F).

Wolter argues his transportation delays violated his rights under the STA. According to Wolter, the excess transportation delay began on May 29, 2021,[6] and ended 104 days later, on September 10, 2021, when he arrived at his destination for evaluation. Wolter's calculations are incorrect. First, we note there was a 31-day period between Wolter's arraignment on July 25, 2020, and Wolter filing his first pretrial motion on August 25, 2020. This results in 31 days toward the STA's 70-day limit. After August 25, 2020, postponements of the trial were due to pre-trial motions, which are excluded from the 70-day limit. *Id.* § 3161(h)(1)(D).

Accounting for exceptions to the STA, the delays Wolter experienced do not exceed the 70-day limit. Wolter claims he spent a total of "five weeks (35 days)" in transit before and after his evaluation and "nearly four months" waiting for an available space at the nonmedical facility. Even assuming Wolter is correct on the number of days, he is wrong about whether all those days counted toward the 70-day limit. First, 20 of the 35 transit days are excluded because § 3161(h)(1)(F) excludes both 10 transport days *to* and 10 days *from* the examination place. This leaves only 15 days that count toward the STA limit. Adding these days to the nonexcludable 31-day period from July 25, 2020, to August 25, 2020, results in only 46 days.[7]

---

[6]The amendment to the original psychological evaluation order was granted on May 18, 2021. So, accounting for the 10 days permitted under the STA, the calculations begin on May 29, 2021.

[7] The district court correctly concluded that no STA violation occurred, but it failed to account for the transportation delay. As noted, even after accounting for the transportation delay, the total delay amounts to 46 days.

For its part, the government contends all transit time is part of the "examination period" excludable under 18 U.S.C. § 3161(h)(1)(A). That cannot be the case, as otherwise 18 U.S.C. § 3161(h)(1)(H)—and its exclusion of only a certain amount of transit time—would be superfluous. *See Corley v. United States*, 556 U.S. 303, 315 (2009). The government is correct, however, that the "nearly four months" (120 days) Wolter spent waiting for an opening at the psychological evaluation facility do not count toward the STA's 70-day limit. Section 3161(h)(1)(A) excludes "delay[s] resulting from any proceeding . . . to determine the mental competency or physical capacity of the defendant." And this court previously held time spent waiting for transportation to an evaluation facility "involved *proceedings* to determine [a defendant's] competency." *McGhee*, 532 F.3d at 737.[8] Here, like in *McGhee*, the period of delay from June 17 to September 10, 2021, resulted from Wolter waiting in San Bernardino for an examination. Thus, under our prior precedent, this time is excluded as part of the "proceeding[s]." *See id.*

Ultimately, only 15 days from the transportation delay and 31 days in between pretrial motions are nonexcludable. This totals 46 days, well below the 70-day threshold.

### B. The Sixth Amendment Right to a Speedy Trial

Wolter also argues the time elapsed before trial violated his Sixth Amendment right to a speedy trial. An individual's right to a speedy trial is protected by the Sixth Amendment of the Constitution. Unlike the STA, the time under the Sixth Amendment begins to run "at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Johnson*, 990 F.3d 661, 670 (8th Cir. 2021) (quoting *Sprouts*, 282 F.3d at 1042). The Supreme Court determined that, unlike other procedural rights protected by the Constitution, the

---

[8]The dissent claims the opinion justifies "the whole situation" as "resulting from [a] proceeding." *Post*, at ----. But 18 U.S.C. § 3161(h)(1)(A) is applicable only to the time Wolter spent in San Bernardino.

right to a speedy trial is relative and "necessitates a functional analysis of the right in the particular context of the case[.]" *Barker v. Wingo*, 407 U.S. 514, 522 (1972); *see also Beavers v. Haubert*, 198 U.S. 77, 87 (1905) (holding that because the right is "necessarily relative," it is "consistent with delays and depends upon circumstances"). To aid this analysis, the Supreme Court adopted a four-factor balancing test weighing: (1) the length of delay, (2) the reason for delay, (3) a defendant's assertion of the right, and (4) prejudice to the defendant. *See Barker*, 407 U.S. at 530. We conclude the district court did not err in finding that the *Barker* balancing test weighs against Wolter.

The first factor, length of delay, does weigh in Wolter's favor. Under the Sixth Amendment, the speedy trial clock began to run on the day of his indictment, April 3, 2019, and continued until his trial began on January 9, 2023. We have concluded "[a] delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors." *See McGhee*, 532 F.3d at 739 (quoting *United States v. Shepard*, 462 F.3d 847, 864 (8th Cir. 2006)). Here, the time elapsed amounts to 1,377 days (almost four years), so the time is presumptively prejudicial and triggers an evaluation into the other factors. *See Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no need for inquiry into the other factors . . . .").

We turn, then, to the second factor, the reasons for the delay. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered . . . ." *Id.* at 531. Here, there is no evidence the government intentionally caused any delay or filed pretrial motions to gain "a tactical advantage." *See McGhee*, 532 F.3d at 739. Wolter contends the prolonged transportation delay and lengthy evaluation proceeding resulted from the government's negligence. But the record indicates the government was attempting to assist Wolter in his effort to attain a timely evaluation. It requested the evaluation take place at a nonmedical facility based on concerns there would be a long wait at a medical facility.

Moreover, Wolter is responsible for the lion's share of delays he experienced. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("[D]elay caused by the defense weighs against the defendant[.]"). Wolter requested the evaluation and was made aware the timeline the district court provided was not guaranteed. And most of the delay is actually attributable to Wolter's multiple motions to continue. Because the lengthy evaluation proceeding was not intended by either party and because the other delays were at Wolter's request, this factor weighs against him.

The third factor is the assertion of the right. Though Wolter did assert his right to a speedy trial, he was chiefly responsible for its delay. "The strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . that he experiences." *Barker*, 407 U.S. at 531. Wolter's substantial contributions to the pretrial delay undermine his attempts to assert his Sixth Amendment rights. *See United States v. Mallett*, 751 F.3d 907, 914 (8th Cir. 2014) (explaining a defendant's pretrial delays weighed against "later attempts to assert his speedy trial rights").

Fourth, Wolter argues the lengthy delays generally prejudiced his ability to prepare his trial defense. The Supreme Court has established that prejudice should be assessed in light of three interests: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired—with the last being the most serious." *Sprouts*, 282 F.3d at 1043 (citing *Barker*, 407 U.S. at 532). Wolter has failed to show how the delay affected any of the three interests listed above in a specified way, especially when he was the party who sought to postpone the trial. *See McGhee*, 532 F.3d at 740.

In all, the *Barker* factors weigh against Wolter, and we conclude his Sixth Amendment right to a speedy trial was not violated.

## III. Conclusion

We affirm the district court.

STRAS, Circuit Judge, concurring in part and dissenting in part.

Successful Speedy Trial Act claims are few and far between. Until today, I had never seen one. When a potential speedy-trial problem pops up, the district court usually grants a continuance after making an express ends-of-justice finding. 18 U.S.C. § 3161(h)(7)(A). It did not happen this time.

All eyes here are on the period from June 3 to September 10, 2021, when Wolter was taken from North Dakota, where his charges were pending, to a county jail in Oklahoma for two weeks, and then to a facility in San Bernardino, California for three months. Only then, after a lengthy delay, did he finally reach the "place[] of examination," which was the Metropolitan Detention Center in Los Angeles. 18 U.S.C. § 3161(h)(1)(F). The court does not count all the time. It should, because the Speedy Trial Act requires it.

According to the statute, a "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization," does *not* count toward the Speedy Trial Act's 70-day limit. *Id.* What *does*, however, is "any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's *arrival at the destination*[, which] shall be presumed to be unreasonable." *Id.* (emphasis added). What results is a simple calculation: anything more than ten days counts absent a showing to the contrary.

The easy part was treating the time in Oklahoma as a "transportation delay," *ante* at 5–6, which resulted in everything past the ten-day mark presumptively counting toward the total. On that point, the court and I agree. Where we differ is

-9-

on the time spent in San Bernardino.  In my view, it counts just the same as the delay in Oklahoma.

The reason is that the Speedy Trial Act requires us to measure the time from the "order directing . . . transportation" to "the defendant's arrival at the destination."  18 U.S.C. § 3161(h)(1)(F).  And it even specifies which destination matters: the "place[] of examination."  *Id.*  The place of examination was a facility in Los Angeles, over 40 miles from San Bernardino, so the speedy-trial clock should have kept running until Wolter reached it.  If we count that time, as the statute tells us we should, the result would be nearly a hundred countable days, more than enough to exceed the 70-day statutory limit.  *See id.* § 3161(c)(1).

The court offers no real explanation for treating the two stops differently.  It cannot be that the whole trip "result[ed] from [a] proceeding . . . to determine [Wolter's] mental competency," *id.* § 3161(h)(1)(A), because the court rejects the government's invitation to read that exclusion so broadly that it swallows the transportation-specific one.  *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining that courts should avoid readings that would make part of a statute "inoperative or superfluous" (citation omitted)).  Nor can it just be that he was "waiting for transportation to an evaluation facility" in San Bernardino, *ante* at 6, because he spent weeks waiting in Oklahoma too.  *See United States v. McGhee*, 532 F.3d 733, 736–38 (8th Cir. 2008) (holding that time spent waiting at the defendant's original facility *before* the clock-starting "order directing transportation" was not transportation time, but a delay *after* the order "did involve . . . *transportation*").  Neither was his "place of examination."  And getting close is not good enough: the Speedy Trial Act required him to be "*at* the destination," not *near* it.  18 U.S.C. § 3161(h)(1)(F) (emphasis added).

It is true that the statute refers to the "delay *resulting from transportation*," *id.* (emphasis added), and Wolter was not on the move after he arrived in San Bernardino.  Nor was he held up by something related to the travel itself, like a flat tire or a grounded flight.  *Cf. McGhee*, 532 F.3d at 739.  But the fact that a law

-10-

enacted in 1975 expressly contemplates situations in which it takes longer than ten days for a defendant to get where he is going is a clear sign that extended layovers, not just detours and traffic jams, are what Congress had in mind. *See id.* at 738 (counting days during a two-week stop on the way back from a competency examination); *see also id.* (stating that the "transportation clock starts . . . on the date of an order directing transportation" and stops on "the date [the defendant] *arrive[s]*" (emphasis added)).

An easy solution was available. The district court could have just "grant[ed] a continuance" during the transportation period and "exclude[d] the resulting delay." *Zedner v. United States*, 547 U.S. 489, 498 (2006). All it would have taken were on-the-record "finding[s] that the ends of justice served by the granting of [a] continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Perhaps waiting for an examination at a nearby medical facility would have taken even longer. Or maybe it was more efficient to keep Wolter a short drive away in San Bernardino rather than moving him cross-country on short notice when a spot opened up in Los Angeles. Either might have justified a continuance. The government also could have fixed the problem by making these same points under the transportation-specific provision to rebut the "presum[ption]" that it was "unreasonable" to spend more than ten days transporting him. *Id.* § 3161(h)(1)(F). Options existed, but one that does not is stretching the statutory language to avoid a speedy-trial problem.

———————————————————

-11-